Opinion
 

 GRIGNON, J.
 

 Defendants and appellants Saul and Marian Barab, individually and as trustees of the Barab Family Trust, appeal from a judgment entered after a court trial in favor of plaintiff and respondent Loretta Nicholson for damages and specific performance of an agreement to purchase residential real property from defendants. Defendants contend that: (1)
 
 *1090
 
 the evidence is insufficient to support the judgment on the issues of the existence of an agreement, the adequacy of the consideration, the performance of conditions precedent and breach of the agreement; (2) the trial court’s statement of decision is inadequate; and (3) the trial court erred in prohibiting the presentation of any evidence on the existence of an enforceable settlement agreement. We conclude that there is substantial evidence to support the judgment, that the statement of decision is adequate and that the trial court did not err by refusing to hear evidence as to the affirmative defense of compromise and settlement. We affirm.
 

 Facts
 

 Defendants held title through a family trust to a single family residence in Venice, California (Venice property). During all pertinent times, the Venice property was leased pursuant to a written lease to tenants Jonette and Gene Fulmer. The lease expired on February 27, 1987. It provided for defendants’ access to the premises during the last 30 days of the lease. The tenants also had an oral agreement with defendants’ attorney Sidney R. Troxell, who managed the Venice property for defendants, that the tenants would have the right of first refusal to purchase the Venice property.
 

 In the fall of 1986, plaintiff became interested in purchasing the Venice property. Plaintiff had previously sold some residential property in Costa Mesa (Costa Mesa property) and wanted to defer certain tax consequences from that sale through a tax-deferred “like kind” property exchange in accordance with United States Internal Revenue Code section 1031.
 
 [1]
 
 Plaintiff believed that the Venice property was a “like-kind” property that could be exchanged for her Costa Mesa property pursuant to section 1031. In order to effect the tax-deferred exchange, plaintiff created a trust when she sold her Costa Mesa property, in which Gary Leigh Smith was the trustor and “accommodator,” and California Best Escrow, Inc., was the trustee of the $125,000 proceeds from the sale. In order to effectuate a tax-deferred exchange, an “accommodator” must first take title to the property to be exchanged and then sign it over to the buyer.
 

 In the negotiations for the purchase of the Venice property, real estate broker George Poptsis of Poptsis Realty negotiated for plaintiff, and Troxell negotiated for defendants. The Venice property had previously been listed
 
 *1091
 
 for sale, but was no longer listed because the tenants had not allowed access to the property.
 

 Poptsis prepared an offer, dated September 11, 1986, for plaintiff to purchase the Venice property for $215,000. The terms of the offer included a $3,000 deposit, an $80,000 down payment, an escrow closing on February 24, 1987, and a contingency of plaintiff obtaining financing for the balance of $135,000. On September 12, 1986, when Poptsis met with Troxell to present the offer, he discussed the fact that plaintiff was involved in a tax-deferred exchange of property, and that an accommodator would be involved. Poptsis Realty also prepared a written commission agreement, which provided that Poptsis Realty would receive a 5 percent commission from the sale of the Venice property. Troxell stated that he would prepare an offer for defendants to present to plaintiff.
 

 Troxell drafted an offer, dated October 1, 1986 (October 1st contract), which essentially mirrored the terms in the offer plaintiff had made, except that it included a $10,000 deposit and an escrow closing on March 1, 1987. The October 1st contract provided that plaintiff’s performance was conditioned on, and that escrow would open when the following conditions were satisfied: (1) approval of the title report, expense reports and the existing lease and (2) commitment of a financial institution to a loan. Defendants’ performance was conditioned on: (1) plaintiff’s deposit of $80,000 into escrow; (2) loan approval within 60 days of October 1, 1986; (3) receipt of plaintiff’s written approval of the expense records, the existing lease, and plaintiff’s loan commitment; and (4) execution of escrow instructions consistent with the contract. The October 1st contract provided that the agreement could only be modified by a writing attached to the contract.
 

 Defendants signed the October 1st contract and the commission agreement on October 1, 1986. Troxell initialed the commission agreement. On October 9, 1986, plaintiff signed a separate copy of the October 1st contract, subject to an addendum.
 

 The addendum went through several revisions and a final draft, dated October 1, 1986, was signed by plaintiff on November 6, 1986 and by both defendants on November 8, 1986. Poptsis received a copy of the signed addendum from either Troxell or Mr. Barab. After the addendum by defendants had been signed by all parties, defendants’ signatures were lined-out by Troxell in an attempt to alter the contract after it had been entered into. The signed addendum referred to the October 1st contract but was never physically attached to the contract.
 

 The addendum provided for escrow to open no later than March 15, 1987, a $5,000 deposit to open escrow, defendants’ cooperation “with lender in
 
 *1092
 
 obtaining all necessary inspections and documents to comply with their requirements to obtain a loan for subject property,” plaintiff’s approval of a current termite inspection report, plaintiff’s approval of a preliminary title report, the Venice property to be delivered vacant and free of all lease and/or rental agreements by close of escrow, defendants to carry certain insurance during escrow and a commission of 5 percent of sales price to be paid to Poptsis Realty at close of escrow.
 

 Early in November 1986, plaintiff applied to Great Western Savings and Coast Federal Savings for a loan to purchase the Venice property. In a letter dated November 13, 1986, plaintiff approved of the current lease on the Venice property, the preliminary title report and the current termite inspection report. On November 13, 1986, plaintiff deposited $5,000 into escrow. Western Bank drafted escrow instructions for plaintiff, dated November 19, 1986. The instructions provided in pertinent part: (1) that the property be delivered vacant at close of escrow; (2) that seller “cooperate with lender in obtaining all necessary inspections”; (3) that seller comply with appropriate municipal ordinances; and (4) that Smith was the buyer, because he was the third party accommodator necessary to effect the section 1031 tax-deferred exchange. The escrow instructions provided that:
 

 “Gary Leigh Smith is acquiring title to subject property to effect a delayed tax deferred exchange for the benefit of [plaintiff]. Smith is not to be responsible for obtaining said loan or any other buyer requirements set forth in this instruction. Concurrently with the recording of the deed from [defendants] to Smith, escrow will cause to be recorded a deed from Smith to [plaintiff], an unmarried woman, which will be handed escrow holder prior to the close.”
 

 Plaintiff and Smith signed the instructions and they were then forwarded to Troxell. Troxell responded in a December 5, 1986, letter stating, “Your proposed escrow instructions do not conform to the Agreement of Purchase and Sale. [Defendants] have not agreed to sell to Gary Leigh Smith. Their compliance with Municipal Ordinances [requiring a report of residential building records and pending assessments] is waived by the agreement. It will be necessary for [plaintiff] to pay expenses of such compliance.”
 

 Poptsis had several conversations with Troxell. Revised escrow instructions, dated January 7,1987, deleted Smith from the transaction. The revised instructions were signed by plaintiff and forwarded to Troxell. Defendants then requested further revisions, including deletion of reference to a broker’s commission.
 

 On January 14, 1987, Troxell told plaintiff that defendants would not go forward with the transaction. Poptsis then called defendants, but they would
 
 *1093
 
 not cooperate in effecting the sale of the property. In a letter dated January 27, 1987, Poptsis informed Troxell that plaintiff was prepared to meet the scheduled closing date of March 15, 1987, and asked Troxell to schedule a time for an appraiser to get access to the Venice property for an appraisal for plaintiff’s loan.
 

 On January 30, 1987, the tenants signed an agreement presented to them by Troxell for the purchase and sale of the Venice property for $200,000, with an escrow closing date of April 1, 1987.
 

 On February 6, 1987, plaintiff’s attorney, who was retained to handle the sale, notified Troxell in writing that a new set of escrow instructions was being prepared in which all references to the broker’s commission would be deleted, which would state that plaintiff would assume all costs of any city building reports defendants were required by ordinance to submit and would waive any rights she had against defendants with reference to the condition of the property in those reports. New escrow instructions, dated February 6, 1987, were drafted in accordance with the representations of plaintiff’s attorney.
 

 In a letter dated February 11, 1987, plaintiff’s attorney confirmed a conversation that he had with Troxell, in which Troxell approved of the new escrow instructions. Plaintiff’s attorney also requested access to the property for an appraisal for plaintiff’s loan. Defendants never signed the February 6, 1987, draft of the escrow instructions, and never obtained access to the Venice property for plaintiff’s appraiser. Thus, plaintiff never was able to get loan approval or deposit her $80,000 into an escrow account.
 

 Procedural Background
 

 On March 10,1987, plaintiff filed a verified complaint against defendants, as individuals and as trustees of the Barab Family Trust, for breach of contract, breach of the covenant of good faith and fair dealing, fraud, specific performance, interference with contract, conspiracy to induce breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, injunctive relief and damages. On May 28, 1987, the tenants filed a cross-complaint against plaintiff for interference with contract and negligent infliction of emotional distress.
 
 [2]
 
 On December 27, 1987, plaintiff filed a first amended complaint to include the facts concerning the contract that had been signed by the tenants and to include causes of action against the tenants.
 

 
 *1094
 
 A mandatory settlement conference was held on February 16, 1990. A settlement was allegedly reached by all parties. On the same date, Troxell sent to all counsel a letter confirming the alleged settlement reached among the parties. Defendants and the tenants confirmed the existence of the agreement, but plaintiff denied agreeing to any settlement.
 

 On February 26,1990, the trial court denied defendants’ motion to enforce the alleged settlement agreement brought pursuant to section 664.6 of the Code of Civil Procedure. On February 28, 1990, the trial court continued the trial in this matter and granted defendants’ motion to amend their answer to allege the affirmative defense of the settlement agreement. On March 6, 1990,' defendants’ motion to bifurcate the trial to try the affirmative defense of an alleged settlement was denied, but a separate settlement as to the tenants was entered on the record in open court. Trial commenced on March 7, 1990. On March 8, 1990, the last day of trial, the court heard defendants’ offer of proof and denied defendants’ request to present evidence on the affirmative defense of settlement. The trial court concluded, as a matter of law, that any settlement agreement was unenforceable.
 

 The entire trial was concluded in less than eight hours. Defendants generally requested a statement of decision. The trial court rendered judgment in favor of plaintiff for specific performance, plus $5,000 in damages. In its statement of decision, the trial court found that: (1) the parties entered into a binding contract for the purchase and sale of the Venice property; (2) the contract consisted of the October 1st contract signed by defendants, a copy of the same agreement signed by plaintiff, and the addendum dated October 1, 1986, signed by all parties; (3) defendants intended to enter into a binding contract; (4) plaintiff performed all conditions under the agreement; and (5) defendants failed to perform under the agreement and impeded plaintiff’s further performance. The trial court expressly found that Poptsis received a copy of the addendum signed by defendants, and that the later line-out of defendants’ signatures was an attempt by Troxell to alter the contract after it was made. The trial court further found that defendants blatantly breached the agreement by refusing access to the property, by refusing to execute the escrow instructions after all requested changes were made, by refusing to conclude the transaction and by attempting through their agent Troxell to sell the Venice property to the tenants. The trial court additionally found that Mr. Barab signed the commission agreement.
 

 Defendants appeal from the judgment.
 

 
 *1095
 
 Discussion
 

 I.-V
 
 *
 

 VI.
 
 Settlement
 

 Defendants contend that they were entitled to a trial on the merits of their affirmative defense of an oral settlement agreement. We conclude that the alleged settlement agreement was unenforceable under the statute of frauds.
 

 On February 16, 1990, at 10 a.m., the action was set for a mandatory settlement conference before Judge William Schoettler, Jr. Present at the settlement conference were plaintiff, counsel for all parties, and the tenants. The defendants were not present. Judge Schoettler met with all counsel jointly and separately and proposed a framework for settlement. After speaking with each other and their clients (other than the defendants) in the hall in front of the courtroom, the attorneys agreed to settle the case. It is not clear whether plaintiff personally agreed to the terms of the settlement agreement at this time, but it appears that she did.
 

 The clerk’s minute order of February 16th states that the matter was settled pursuant to section 664.6 of the Code of Civil Procedure with Judge Schoettler participating, the trial date was vacated, jury fees were ordered refunded and counsel for plaintiff was directed to prepare the stipulated judgment for Judge Schoettler’s signature. The settlement agreement was not placed on the record, nor was it memorialized in writing before the parties left the courtroom.
 

 On that same afternoon, Troxell informed plaintiff’s counsel that defendants accepted the terms of the settlement agreement. Later that day, plaintiff’s counsel prepared and transmitted by facsimile machine to the other counsel a letter memorializing the settlement agreement.
 
 [3]
 
 The letter stated
 
 *1096
 
 that the parties would cancel the existing escrow for sale of the property, that plaintiff would purchase the property from defendants for $270,000, that she
 
 *1097
 
 would thereafter sell the property for a minimum of $375,000, and that plaintiff and the tenants would share in the sale proceeds according to a set formula. The letter set forth the other material terms of the purchase, such as interim rent arrangements, financing, and real estate commission. After receiving the letter, Troxell again informed counsel for plaintiff that the defendants agreed to the terms of the settlement agreement.
 

 On February 21, 1990, counsel for plaintiff informed the other counsel that plaintiff had felt extremely pressured at the settlement conference and had agreed to the proposed settlement without fully understanding the financial terms of the agreement. He informed them that she did not wish to finalize the settlement.
 

 Code of Civil Procedure section 664.6 provides that, “[i]f parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement.” Section 664.6 establishes a statutory procedure for the enforcement of settlement agreements which are in writing or placed on the record in open court. A letter from a plaintiff’s attorney to a defendant’s attorney confirming an oral settlement agreement, which is signed by plaintiff’s attorney but not by plaintiff, is not a written stipulation for settlement within the meaning of section 664.6.
 
 (Gallo
 
 v.
 
 Getz
 
 (1988) 205 Cal.App.3d 329, 333 [252 Cal.Rptr. 193].)
 

 The statutory procedure for enforcing settlement agreements under section 664.6 is not exclusive. It is merely an expeditious, valid alternative statutorily created.
 
 (Kilpatrick
 
 v.
 
 Beebe
 
 (1990) 219 Cal.App.3d 1527, 1529 [269 Cal.Rptr. 52].) Settlement agreements may also be enforced by motion for summary judgment, by a separate suit in equity or by amendment of the pleadings to raise the settlement as an affirmative defense. Settlement agreements not enforceable under Code of Civil Procddure section 664.6 are governed by the legal principles applicable to contracts in general. Thus, unless a writing is required by the statute of frauds, oral settlement agreements are enforceable in the same manner as oral agreements in general.
 
 (Gorman
 
 v.
 
 Holte
 
 (1985) 164 Cal.App.3d 984 [211 Cal.Rptr. 34].) An agreement for the sale of real property is unenforceable unless it is in writing and signed by the party to be charged. (Civ. Code, § 1624, subd. (c).)
 

 No California appellate case has directly resolved the issue as to whether the statute of frauds is applicable to settlement agreements. A number of California appellate cases however, have impliedly concluded that the statute of frauds does apply to such agreements.
 

 
 *1098
 
 In
 
 Leonard
 
 v.
 
 Rose
 
 (1967) 65 Cal.2d 589 [422 P.2d 604], the parties entered into an oral out-of-court settlement agreement in which defendants agreed to pay an individual a specified monthly sum for the rest of the individual’s life in return for the dismissal of a lawsuit. The court held that “for the balance of his [or her] life” meant that the agreement could possibly be performed within one year and thus did not come within the purview of the statute of frauds. The oral settlement agreement was found to be enforceable.
 
 (Id.
 
 at 592.)
 

 In
 
 People
 
 ex rel.
 
 Dept. Pub. Wks.
 
 v.
 
 Douglas
 
 (1971) 15 Cal.App.3d 814 [93 Cal.Rptr. 644], the parties entered into an oral out-of-court settlement of a condemnation action. The court held that an agreement pertaining to the amount of damages recoverable for real property transferred by eminent domain is not an agreement for the sale or transfer of real property requiring compliance with the statute of frauds. An oral settlement agreement was, therefore, found to be enforceable.
 
 (Id.
 
 at 819.)
 

 In
 
 Hastings
 
 v.
 
 Matlock
 
 (1985) 171 Cal.App.3d 826 [217 Cal.Rptr. 856], the parties entered into an oral out-of-court settlement of an action involving a breach of contract for sale of real property. The settlement agreement provided for plaintiffs to pay defendants the costs of improvements defendants had made to the property while in possession of the real property and for rescission of the contract for sale. The court held that the statute of frauds was not applicable, because the agreement only contemplated payment of the costs of improvements and rescission of the contract of sale, neither of which need be in writing to be enforceable.
 
 (Id.
 
 at pp. 836-837.) The oral settlement agreement was found to be enforceable.
 

 In
 
 Kreling
 
 v.
 
 Walsh
 
 (1947) 77 Cal.App.2d 821 [176 P.2d 965], the court found the statute of frauds inapplicable to an oral out-of-court settlement which was subsequently embodied in a signed written contract and thereafter executed.
 

 Most recently, the Ninth Circuit, applying California law, held that the statute of frauds is applicable to out-of-court settlement agreements for the sale of real property.
 
 (Texaco Inc.
 
 v.
 
 Ponsoldt
 
 (9th Cir., 1991) 939 F.2d 794.) The Ninth Circuit stated: “Furthermore, numerous California cases have analyzed settlement agreements to determine whether the statute of frauds applies, and none have declared a blanket exception for settlement agreements.”
 
 (Id.
 
 at p. 800.) We agree with the conclusion of the Ninth Circuit.
 

 
 *1099
 
 We note that there is a well-established policy in the law to discourage litigation and favor settlement. Pretrial settlements are highly favored because they diminish the expense of litigation.
 
 (Douglas, supra,
 
 15 Cal.App.3d at p. 820;
 
 Hastings, supra,
 
 171 Cal.App.3d at p. 837.) “It is common knowledge in the legal profession that judicially supervised settlement conferences are critical to the efficient administration of justice in California.”
 
 (Greyhound Lines, Inc.
 
 v.
 
 Superior Court
 
 (1979) 98 Cal.App.3d 604, 608 [159 Cal.Rptr. 657].)
 

 In spite of the policy favoring pretrial settlements, however, we can find no reason to exempt settlement agreements from the statute of frauds where the statute of frauds would otherwise be applicable. Settlement agreements are merely one type of contract and should be governed by the laws governing contracts in general. We recognize that the oral settlement agreements involved in the
 
 Leonard, Douglas, Hastings
 
 and
 
 Texaco
 
 cases were out-of-court and not judicially supervised settlement agreements. We cannot conclude that judicially supervised settlement agreements should be specially exempted because of the part played by the court. Section 664.6 already provides a statutory method to enforce judicially supervised settlement agreements which are in writing or placed on the record. Where the parties choose not to comply with the requirements of Code of Civil Procedure section 664.6, no policy considerations favor exempting such judicially supervised settlement agreements from the statute of frauds.
 
 [4]
 

 In this case, it is clear that the settlement agreement is an agreement for the sale of real property and not merely an agreement to pay damages to settle a lawsuit involving real property. It is equally clear that the oral settlement agreement was not made orally before the court or in a writing signed by Nicholson. Thus the agreement was not enforceable under section 664.6. Therefore, the settlement agreement was subject to the statute of frauds provisions of Civil Code section 1624, subdivision (c). We conclude that, based on defendants’ offer of proof at trial, the trial court properly determined, as a matter of law, that the settlement agreement was unenforceable.
 
 [5]
 

 
 *1100
 
 Disposition
 

 The judgment is affirmed. Appellants shall bear the costs on appeal.
 

 Ashby, Acting P. J., and Boren, J., concurred.
 

 [1]
 

 Section 1031 of the United States Internal Revenue Code provides an exception to the rule which requires recognition of a gain or loss on the sale or exchange of property. If property which is held for productive use in trade or business or for investment is exchanged, under certain conditions, solely for property of a like kind to be held either for productive use in trade or business or for investment, then no gain or loss is recognized.
 
 (Bezdjian
 
 v.
 
 C.I.R.
 
 (9th Cir. 1988) 845 F.2d 217, 218.)
 

 [2]
 

 The record on appeal does not establish the manner in which the tenants were originally brought into the lawsuit.
 

 *
 

 See footnote,
 
 ante,
 
 page 1671.
 

 [3]
 

 The letter stated in its entirety: “The following snmmarizes the terms and conditions of the settlement reached between our respective clients in court this morning. Those terms and conditions are the following:
 

 “1.
 
 Purchase of the Property by Loretta Nicholson.
 
 Loretta Nicholson will purchase the property from the Barab Family Trust and/or Mariann and Saul Barab. The purchase price will be $270,000.00.
 

 “2.
 
 Payment of the Purchase Price.
 
 The purchase price referred to in paragraph 1 hereinabove will be comprised as follows:
 

 
 *1096
 
 “a. Nicholson will execute a Note Secured by First Deed of Trust covering the property. The Note will be in the principal sum $270,000.00.
 

 “b. The Note will mature on August 1, 1990. No payments will be made prior thereto. Nicholson shall have the right to extend the due date under the Note by paying to Barab the sum of $10,000.00 applied against the purchase price hereinabove referred to and by paying Barab interest at the rate of ten percent (10%) per annum payable monthly. The extension shall be for one hundred-twenty (120) days.
 

 “3.
 
 Withdrawal of Lis Pendens.
 
 Nicholson and [tenants] will each withdraw the Lis Pendens’ currently of record on the property.
 

 “4.
 
 Payment to [Tenants],
 
 [Tenants] shall receive a Note Secured by Second Deed of Trust covering the property. The Note shall be in the principal amount of $20,000.00 and shall be due and payable upon sale of the property. In addition to the $20,000.00 referred to hereinabove, [tenants] will have a ‘profit participation’ as is defined in the succeeding paragraph.
 

 “5.
 
 Profit Participation of [Tenants].
 
 Nicholson shall sell the property at a ‘floor’ of $375,000.00. If the property sells for a net price of $375,000.00, [tenants] shall receive the $20,000.00 referred to hereinabove and no other amounts. If, however, Nicholson is able to sell the property for more than $375,000.00, net the proceeds shall be allocated as follows:
 

 “a. First, payment of brokerage commissions which commissions shall not exceed five percent (5%) of the purchase price;
 

 “b. Next, to closing costs including, but not limited to, escrow changes, title charges and allied fees;
 

 “c. Next, to reimbursement to Nicholson for expenses advanced to the rehabilitation of the property which expenses are not to exceed $10,000.00;
 

 “d. Next, to Nicholson two-thirds (2/3) of the excess over $375,000.00;
 

 “e. Last, to [tenants], one-third (1/3) of the excess over $375,000.00.
 

 “6.
 
 Rent.
 
 [Tenants] shall pay to Nicholson the sum of $1,250.00 as and for rent each month on or before March 1, 1990 and on or before April 1, 1990. They shall vacate the real property and improvements on or before May 1, 1990 and shall remove all personal property owned oi held by them located at the real property prior to said date. Nicholson will pay any and all amounts received from [tenants] to the Barabs. In the event that [tenants] either fail to make the monthly rental payments or fail to vacate the property prior to May 1, 1990, Nicholson shall be entitled to obtain an ex parte Writ of Possession and execute thereunder.
 

 “7.
 
 Right to Real Estate Commission.
 
 Nothing in this agreement shall prohibit [tenants] or Clark Realty from presenting [an] Offer to Purchase the real property or receiving a portion of the commission due as a result thereof.
 

 “8.
 
 Pending Escrow.
 
 The parties acknowledge that Nicholson alleges that an escrow is now open at Western Bank. The parties will sign any documents necessary for Nicholson to cancel said escrow and receive all funds held by the escrow holder provided that the execution of documents required hereunder are at no cost or expense to any party other than Nicholson.
 

 “9.
 
 Back Rent.
 
 Barab contends that [tenants] owe approximately $2,000.00 as and for back rent. [The tenants] agree that $2,000.00 is due as and for back rent and agree to pay Barab this amount from the sale proceeds to be received by them hereunder.
 

 “It is my belief that we will execute a settlement agreement incorporating mutual and general releases as well as a court order. In this fashion, the court can retain jurisdiction to make sure the parties comply with their requirements under the settlement agreement.
 

 “I hope that the above correctly summarizes the terms of our settlement. If I am incorrect in any fashion, please let me know immediately because I intend to begin drafting the
 
 *1097
 
 document first thing Monday morning. Congratulations to all parties involved in resolving this most difficult piece of litigation.”
 

 [4]
 

 We specifically do not address the issue of whether judicially supervised settlement agreements, made orally on the record before the court, in compliance with Code of Civil Procedure section 664.6 need also comply with the statute of frauds.
 

 [5]
 

 Defendants have not claimed either in the trial court or on appeal that the oral settlement agreement or the letter signed by plaintiff’s attorney complied with the statute of frauds.
 
 (Woerner
 
 v.
 
 Woerner
 
 (1915) 171 Cal. 298 [152 P. 919];
 
 Valente-Kritzer Video
 
 v.
 
 Pinckney
 
 (9th Cir. 1989) 881 F.2d 772.)