[No. A091299. First Dist., Div. Three. Nov. 25, 2002.]

MARJORIE GAUSS et al., Plaintiffs and Respondents, v. GAF CORPORATION, Defendant and Appellant.

[No. A091308. First Dist., Div. Three. Nov. 25, 2002.]

CARTER HAUGHT, Plaintiff and Respondent, v. GAF CORPORATION, Defendant and Appellant.

[No. A092647. First Dist., Div. Three. Nov. 25, 2002.]

In re COMPLEX ASBESTOS LITIGATION.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II. of the DISCUSSION.

## COUNSEL

Simpson Thacher & Barlett, Seth A. Ribner, David J. Woll and Linda H. Martin for Defendant and Appellant GAF Corporation.

DeWitt & Roberts, Nicholas DeWitt, Kelly C. Fitzgerald and Steven F. Raspe for Defendant and Appellant G-I Holdings, Inc.

Kazan, McClain, Edises, Abrams, Fernandez, Lyons & Farrise, David McClain, Dianna Lynos and James L. Oberman for Plaintiffs and Respondents Marjorie Gauss et al., and Fred Price et al.

McKenna & Cuneo, Lisa L. Oberg, Camille K. Fong; Shea & Gardner and William F. Sheehan for Plaintiffs and Respondents Certainteed Corporation, Maremont Corporation and Union Carbide Corporation.

Palmieri, Tyler, Wiener, Wilhelm & Waldron, Scott R. Carpenter; Rubin & Rubin and Ronald B. Rubin for Plaintiffs and Respondents Pfizer, Inc., and Quigley Company, Inc.

## OPINION

**PARRILLI, J.**—These consolidated appeals raise a question about the enforceability of mass tort settlements under Code of Civil Procedure section

664.6.[1] Specifically, can section 664.6 be used to enforce a settlement that was signed by a party's agent, rather than the party itself, when the agent had sole and exclusive authority to settle claims on the party's behalf? Reluctantly, we conclude the answer is no. The summary, expedited enforcement procedure afforded by section 664.6 is only available when a settlement satisfies the statutory requirements designed to ensure the parties have actually consented to the terms of the settlement. A writing not signed by one of the parties (and, in this case, silent as to the extent of a party's obligation) does not satisfy section 664.6. Because the trial court entered judgment in these appeals pursuant to section 664.6, and reserved ruling on the plaintiffs' alternative motions for summary judgment, we reverse the judgments and remand for further proceedings.

BACKGROUND

I. *The CCR*

In 1988, several companies that previously manufactured, distributed or sold asbestos-containing products joined together to form a nonprofit corporation called the Center for Claims Resolution (CCR). The companies, referred to as "members," established the CCR to administer all aspects of the litigation of asbestos-related claims brought against the companies. In a founding document, called the "Producer Agreement Concerning Center for Claims Resolution" (Producer Agreement), each member company designated the CCR its "sole agent to administer and arrange on [the member's] behalf for the evaluation, settlement, payment or defense of all asbestos-related claims" against the member. Further, each member agreed to give the CCR "exclusive authority" to settle, pay or defend asbestos-related claims asserted against the member. While individual members ceded to the CCR their ability to negotiate or enter separate settlements with asbestos claimants, they also agreed to a formula (set forth in "Attachment A" to the Producer Agreement) for apportioning shares of liability and expenses among themselves in each particular case.[2] The CCR generally bills members for their apportioned shares of a settled claim within 60 to 90 days before the claim is due to be paid. Often, members' shares are determined after the CCR settles a claim. Since its inception in 1988, the CCR has settled over 200,000 claims asserted against its members across the country.

---

[1]All statutory references are to the Code of Civil Procedure.

[2]A member's percentage share could vary from case to case depending, for example, on the asbestos plaintiff's occupation, job sites and exposures to various products.

Appellant GAF Corporation (GAF)[3] was one of the founding members of the CCR in 1988. Over the years, the CCR settled numerous asbestos claims on behalf of GAF, and GAF paid its share of the settlements according to the CCR's calculations. However, in late 1999, the companies had a falling out. The CCR claimed GAF had violated the Producer Agreement by refusing to pay its apportioned shares of asbestos settlements the CCR had entered on its behalf. On December 17, 1999, GAF received notice from the CCR that GAF's membership in the CCR would be terminated, effective January 17, 2000. The parties disputed the extent of GAF's responsibility to pay shares of settlements the CCR had allocated to GAF before its expulsion. Pursuant to the Producer's Agreement, this dispute was submitted to confidential alternative dispute resolution proceedings. As of February 15, 2000, the CCR estimated the total amount of GAF's share of settlements, which had been billed to GAF but remained unpaid, exceeded $50 million.

## II. *The Alameda County Settlements*

The appeals now before us arose from settlements the CCR entered into with certain California asbestos plaintiffs during the several months before GAF was formally expelled from the CCR. In July 1999, counsel for the estate of James Gauss (and other asbestos plaintiffs) spoke with James McFadden, a "zone manager" for the CCR, about settling several asbestos suits against CCR members. Plaintiffs' counsel and McFadden agreed to settle the Gauss family's claims against the CCR companies for a specific amount. In accordance with this agreement, on January 25, 2000, the Gauss plaintiffs signed a document releasing their claims against all CCR members, including GAF, in consideration for receiving the agreed-upon settlement sum. However, on February 15, 2000, the CCR sent the Gauss plaintiffs a check for less than the agreed-upon settlement amount. In a cover letter, McFadden explained that the CCR was remitting payment for the agreed-upon settlement *minus* the portion attributable to GAF (which came to approximately one-third of the total consideration). According to McFadden, the CCR had billed GAF but GAF refused to pay its share.

A similar series of events occurred in the *Haught* case. On December 27, 1999, Haught's counsel (who had also represented the Gauss family) reached an agreement with McFadden to settle the claims against all CCR member companies for a specific sum. In consideration for this amount, on February

---

[3]The asbestos plaintiffs below sued GAF Corporation, and GAF Corporation filed notices of appeal in the cases now before us. However, after the notices of appeal were filed, GAF engaged in a series of transactions that resulted in the formation of a successor entity called G-I Holdings, Inc. Although some of the parties' briefs adopt this new corporate name (G-I Holdings), we shall continue to refer to the appellant by the name it used throughout the proceedings below, i.e., GAF Corporation, or GAF.

20, 2000, Haught and his family released the CCR defendants, including GAF, from all claims. Then, on March 23, 2000, the CCR presented the Haught plaintiffs with a check for less than the agreed-upon settlement amount, with an explanation that the missing money (approximately 40 percent of the total settlement) represented GAF's unpaid share.

On March 16, 2000, plaintiffs in the *Gauss* case filed a motion to amend their complaint to add a cause of action against GAF for breach of a settlement contract, and a motion to enforce the settlement against GAF, pursuant to section 664.6 or the court's inherent power. In the event the court did not enforce the settlement, the Gauss plaintiffs sought the alternative relief of summary judgment against GAF. Following an expedited briefing schedule, on March 23, 2000, the trial court granted both of plaintiffs' motions and entered judgment against GAF for the portion of the CCR settlement that remained unpaid. The court later modified its order, and issued a judgment amended nunc pro tunc, to clarify that it had granted the plaintiffs' motion for judgment on the settlement but had reserved ruling on the alternative motion for summary judgment.

On April 5, 2000, plaintiffs' counsel filed a similar motion to enforce the CCR settlement in the *Haught* case. Once again, the trial court heard the motion upon shortened time. GAF opposed the motion and sought leave to conduct expedited discovery regarding the scope of CCR's agency and its right to determine GAF's share of settlements. The court denied GAF's request to take discovery and, on April 20, 2000, granted plaintiffs' motion and entered judgment against GAF for the portion of the CCR settlement that remained unpaid.

On July 7, 2000, the same attorney who represented the *Gauss* and *Haught* plaintiffs filed a motion seeking to enforce settlements against GAF, or, in the alternative, seeking summary judgment against GAF, in 71 asbestos cases. The motion was filed in the trial court's coordinated asbestos proceedings, *In re Complex Asbestos Litigation* (No. 607734-0). Plaintiffs' counsel declared that, between March and November 1999, he had reached agreements with the CCR's zone manager to settle the enumerated cases for specific sums. Pursuant to these agreements, the plaintiffs had signed releases discharging their claims against all CCR defendants, including GAF. Most of these releases were executed in February and March 2000; all but four of the releases were executed after GAF's expulsion from the CCR. In each of the 71 cases, the CCR remitted payment for less than the agreed-upon settlement amount, withholding a portion said to reflect GAF's unpaid share.

After plaintiffs filed their motion, GAF served discovery on defendants represented by the CCR and sought to compel expedited responses. Upon

CCR's motion, the court quashed this discovery. GAF also filed a motion to enforce the settlements at issue against the CCR defendants, claiming members of the CCR had a joint and several obligation to fund the settlements and the dispute about GAF's share was the subject of a pending arbitration. The court denied this motion. On August 29, 2000, the court issued an order granting plaintiffs' motion to enforce their settlement agreements against GAF pursuant to section 664.6. Once again, the court reserved ruling on plaintiffs' alternative motion for summary judgment. The court entered judgment against GAF in 64 cases for portions of the CCR settlement that remained unpaid.[4]

We consolidated GAF's separate appeals from judgments entered in the *Gauss*, *Haught* and *In re Complex Asbestos Litigation* cases.[5] In January 2001, G-I Holdings advised this court that GAF had filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code. Accordingly, all proceedings in these appeals were stayed until September 2001, when the federal court overseeing GAF's bankruptcy issued an order authorizing the appeals to proceed.

DISCUSSION

I. *Court Erred in Entering Judgments Pursuant to Section 664.6*

A. *Section 664.6 Requires Signatures of the Settling Parties*

 GAF contends the judgments in each of these cases must be reversed because GAF did not sign the settlement agreements and because the agreements did not specify a material term, namely GAF's share of the settlement. A trial court's determination of factual matters on a motion to enforce settlement is reviewed for substantial evidence. (*Burckhard v. Del Monte Corp.* (1996) 48 Cal.App.4th 1912, 1916 [56 Cal.Rptr.2d 569].) However, GAF's claim primarily raises a question of law concerning the construction and application of section 664.6. As such, it requires independent appellate review. (*Burckhard*, at p. 1916; *Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162 [64 Cal.Rptr.2d 571].)[6]

Section 664.6 states: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the

---

[4]The parties disputed whether GAF was a defendant in seven of the 71 cases. Plaintiffs' counsel took these seven cases "off the tables" and pursued judgments on the 64 remaining cases.

[5]In addition, the plaintiffs in *Gauss* and *In re Complex Asbestos Litigation* filed cross-appeals from the trial court's "decision to reserve ruling" on their alternative summary judgment motions.

[6]GAF asked this court to take judicial notice of a reporter's transcript and order from the San Francisco County Superior Court denying a motion by other asbestos plaintiffs to enforce

court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." The Legislature enacted section 664.6 in 1981 to create a summary procedure for enforcing settlement agreements under certain circumstances. (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 585 [41 Cal.Rptr.2d 878, 896 P.2d 171].) Previously, settlement agreements could be enforced only by a motion for summary judgment, a separate suit in equity, or an amendment to the pleadings. (*Id.* at pp. 584-585.)

In *Levy v. Superior Court, supra,* 10 Cal.4th 578, the Supreme Court considered whether trial courts may enter judgment on a settlement pursuant to section 664.6 when the written stipulation to settle is signed by a litigant's attorney, and not by the litigant personally.[7] Noting that the statute requires a stipulation by the "parties" to pending litigation, the court concluded the term "parties" must be interpreted literally to mean the litigants themselves. (*Levy,* at p. 586.) Although the term "party" is recognized in other contexts as including the litigant's attorney of record (e.g., § 437c), the court determined the Legislature intended "a narrower meaning" for the word, "namely the specific person or entity by or against whom legal proceedings are brought. [Citations.]" (*Levy v. Superior Court, supra,* at p. 583.) Unlike other steps an attorney takes in managing a lawsuit, the court reasoned, settlement ends the lawsuit and is thus "such a serious step that it requires the client's knowledge and express consent. [Citation.]" (*Ibid.*)

The majority in *Levy* also observed that section 664.6 was designed to provide an alternative procedure for enforcing settlements when certain strict requirements are met that will ensure protection of the settling parties. In enacting section 664.6, the Legislature "created a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met. Thus the statute requires the 'parties' to stipulate in writing or orally before the court that they have settled the case. The litigants' direct participation tends to ensure

similar settlements against GAF pursuant to section 664.6. We deferred ruling on this motion until time of decision and now deny GAF's request. We fail to see how this lower court ruling is relevant to the present appeal, and we suspect GAF submitted it simply to show that at least one trial court has agreed with its interpretation of section 664.6.

[7]The *Levy* decision addressed an earlier version of section 664.6, which provided: " 'If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement.' " (*Levy v. Superior Court, supra,* 10 Cal.4th at p. 580, italics omitted.) The statute was amended in 1993 to require, inter alia, that a written stipulation be "signed by the parties." (Stats. 1993, ch. 768, § 1, p. 4260; see *Levy v. Superior Court, supra,* at p. 580, fn. 1.)

that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. [Citations.] It also protects parties from impairment of their substantial rights without their knowledge and consent. [Citation.]" (*Levy v. Superior Court, supra,* 10 Cal.4th at p. 585, fn. omitted.)

 None of the settlement documents in these cases bears the signature of a GAF corporate officer. Nonetheless, plaintiffs and the CCR·defendants (collectively respondents) argue the settlements are enforceable under section 664.6. Respondents first maintain the *Levy* rule does not apply to corporate parties, since a corporation can only act through its employees and agents. (See *Black v. Bank of America* (1994) 30 Cal.App.4th 1, 6 [35 Cal.Rptr.2d 725].) But *Levy* makes no such distinction. In fact, the case construes the term "party" in section 664.6 to mean "the specific person *or entity* by or against whom legal proceedings are brought." (*Levy v. Superior Court, supra,* 10 Cal.4th at p. 583, italics added; see also *Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 37 [126 Cal.Rptr.2d 400] [agreement belatedly signed by corporate officer did not satisfy *Levy*'s party-signature requirement]; *Burckhard v. Del Monte Corp., supra,* 48 Cal.App.4th at pp. 1914-1915 [*Levy* rule barred enforcement under § 664.6 of settlements not signed by plaintiffs claiming asbestos-related injury or the corporate defendant].)

In a related argument, plaintiffs suggest the holding of *Levy* is limited to the context of lawyer-signed settlement agreements. Once again, however, the *Levy* decision itself includes no such limitation. Moreover, at least two appellate decisions have concluded *Levy* bars the use of section 664.6 to enforce settlements signed by a party's spouse and attorney but not the party herself. In *Williams v. Saunders, supra,* 55 Cal.App.4th at pages 1162-1163, the trial court found Saunders had authorized both her husband and her attorney to act on her behalf, yet the Court of Appeal concluded Saunders could not be bound by a settlement she did not personally sign. The court reasoned: "Although *Levy* does not address the question whether the signature of a spouse and codefendant is sufficient to demonstrate assent to settlement terms for purposes of section 664.6, the court's assessment of the intent of the legislation supports the conclusion it is not." (*Id.* at p. 1163; see also *Cortez v. Kenneally* (1996) 44 Cal.App.4th 523 [51 Cal.Rptr.2d 671] [holding agreement signed by a party's attorney and her codefendant spouse not enforceable under § 664.6].)

Of more substance is respondents' argument that the requirements of section 664.6 and *Levy* were satisfied because the settlement agreements

were signed by an agent GAF had expressly authorized to enter into settlements on its behalf. In the Producer Agreement, GAF designated the CCR as its "sole agent" and gave the CCR "exclusive authority and discretion" to settle asbestos-related claims on its behalf Moreover, GAF acknowledges that no individual member of the CCR retained authority to settle asbestos claims on its own. Respondents urge us to excuse *Levy*'s party-signature requirement under these exceptional circumstances—in which only the party's agent, and not the party itself, had authority to settle the lawsuit. We decline to do so.

The cases following *Levy* have recognized no exceptions to the rule that litigants themselves must sign a settlement for it to be enforceable *under section 664.6.* (See, e.g., *Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 304-306 [87 Cal.Rptr.2d 822] [interpreting *Levy* to require signatures of *all* parties to a settlement, not just the party against whom enforcement is sought]; *Williams v. Saunders, supra,* 55 Cal.App.4th at pp. 1162-1163 [*Levy* precludes enforcement under § 664.6 of settlement signed by spouse].) In *Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 716 [49 Cal.Rptr.2d 722], the Sixth District Court of Appeal concluded *Levy* and *Johnson v. Department of Corrections* (1995) 38 Cal.App.4th 1700 [45 Cal.Rptr.2d 740] (concerning motions to enforce oral settlements made before the court) precluded reliance on agency principles as a means of satisfying the requirements of section 664.6. Indeed, *Levy* itself holds that the signature of a *duly authorized* attorney, who acts as an agent of the client (see *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109]), does not suffice to permit enforcement of a settlement under section 664.6. (See *Levy v. Superior Court, supra,* 10 Cal.4th at pp. 586, 592 (dis. opn. of Werdegar, J.).) We concur in the *Murphy* court's assessment that, in determining the Legislature intended strict safeguards to prevent section 664.6 from becoming a tool of abuse, the *Levy* decision "appear[s] to reject traditional agency analysis . . . ." (*Murphy v. Padilla, supra,* at p. 716.)

In support of their position that section 664.6 does permit enforcement of settlements signed by agents in special circumstances, respondents rely heavily on statements of the court in *Robertson v. Chen* (1996) 44 Cal.App.4th 1290 [52 Cal.Rptr.2d 264]. However, these statements are dicta, and the actual holding of *Robertson* does not aid respondents. In *Robertson,* the defendants' mandatory settlement conference (MSC) statement, signed by an attorney, stated that a defense settlement offer would remain open until trial. When the plaintiffs later attempted to accept the offer, the defendants claimed it had been revoked. (*Id.* at pp. 1291-1292.) The Court of Appeal concluded the plaintiffs could not summarily enforce the settlement using section 664.6 because the MSC statement was signed only by counsel

for one side. (*Robertson,* at p. 1293.) However, the court went on, in a lengthy discussion not essential to disposition of the case, to express the view that special considerations warrant a relaxation of *Levy*'s party-signature requirement when a party is represented by insurance counsel and the carrier is providing defense and indemnity without a reservation of rights. (*Id.* at pp. 1293-1296.) When an insurer undertakes to provide a defense and pay indemnity without reservation, the *Robertson* court reasoned, the insurer's decision to settle within policy limits "does not prejudice the 'substantial rights' of the insured." (*Id.* at p. 1294.) In such cases, in which the insured party is generally precluded from interfering with the carrier's settlement negotiations, *Robertson* opined that the "superfluous" signature of an insured should not be necessary to render the agreement enforceable under section 664.6. (*Robertson,* at pp. 1294-1295.)

As noted, *Robertson*'s discussion of insurance-funded settlements is unquestionably dicta. ■ "Dicta is not authority upon which we can rely. [Citation.]" (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 850 [60 Cal.Rptr.2d 780].) Moreover, the court's discussion does not support respondents' position because, unlike *Robertson*'s hypothetical insurance carrier, the CCR clearly had the ability to prejudice "substantial rights" of GAF and, in fact, did so by purporting to bind GAF to millions of dollars in settlement obligations. When an insurance carrier agrees to handle the defense of a claim and pay indemnity, without reserving rights to itself, and then negotiates a settlement *within policy limits,* "the consent of the insured [to the settlement] is usually superfluous." (*Robertson v. Chen, supra,* 44 Cal.4th at pp. 1294-1295.) Because the insured is not personally liable for such a settlement, *Levy*'s concern for preventing impairment of a party's substantial rights is arguably not implicated. (See *id.* at p. 1295.) But, while GAF is like an insured in that it contractually ceded settlement authority to the CCR and promised not to interfere in the CCR's settlement negotiations with asbestos plaintiffs, GAF is different because it remained responsible for paying the settlement shares allocated to it.[8] In every settlement the CCR entered on GAF's behalf, the CCR imposed on GAF an obligation to pay. Under the principles discussed in *Levy,* such an obligation cannot be enforced using the summary expedited procedures of section 664.6 absent GAF's express consent to the settlement, as evidenced by the signature of its authorized corporate representative.

Plaintiffs also rely on *Gallo v. Getz* (1988) 205 Cal.App.3d 329 [252 Cal.Rptr. 193], a case decided before *Levy.* Stressing the unfairness of allowing GAF to "take complete advantage" of the releases plaintiffs executed in favor of all CCR defendants, plaintiffs characterize *Gallo* as

---

[8]The precise amount of GAF's payment, of course, was subject to reduction if GAF successfully challenged it under the arbitration procedure outlined in the Producer Agreement.

holding that a party who accepts the benefits of a settlement cannot evade enforcement of the agreement under section 664.6. But the decision does not sweep as broadly as plaintiffs suggest. In *Gallo,* attorneys for both sides negotiated a settlement of a personal injury action. The plaintiff then refused to "go along" with the settlement, and he did not sign the settlement agreement or release documents. (*Gallo,* at p. 332.) However, the plaintiff did accept, endorse and deposit a bank draft from the defendant's insurer, which was sent as part of the consideration for settlement of the plaintiff's claim. (*Id.* at pp. 331-332.) Although the letter from the plaintiff's attorney memorializing settlement terms did not satisfy the requirements of section 664.6, the appellate court concluded the bank draft constituted a "writing" signed by the parties and hence was sufficient to support enforcement of the settlement under section 664.6. (*Gallo,* at pp. 333-334.) *Gallo* is easily distinguishable from the present case on its facts, since the record contains *no* writing with GAF's signature indicating consent to a settlement. While the plaintiffs did release GAF, along with all the other CCR members, in all but four cases the plaintiffs executed these releases *after* GAF had been expelled from the CCR. Indeed, many of the releases were executed after plaintiffs' counsel began receiving only settlement payments from the CCR withholding GAF's unpaid share.[9]

Because plaintiffs presented no writing signed by GAF indicating GAF's consent to settle their lawsuits, the trial court erred in entering judgment against GAF pursuant to section 664.6. Section 664.6, as construed by the Supreme Court in *Levy,* simply does not permit the use of its summary, expedited procedures to enforce a settlement agreement signed only by a party's agent. (See *Levy v. Superior Court, supra,* 10 Cal.4th at p. 584 [the Legislature intended § 664.6 as an enforcement mechanism for settlements entered by the litigants themselves]; *Murphy v. Padilla, supra,* 42 Cal.App.4th at p. 716 [*Levy* "appear[s] to reject traditional agency analysis . . . ."]; see also *Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc., supra,* 103 Cal.App.4th at p. 37 ["Because of its summary nature, strict compliance with the requirements of section 664.6 is prerequisite to invoking the power of the court to impose a settlement agreement"].) Furthermore, the result we reach in this case is consistent with *Levy*'s observation that the party-signature requirement of section 664.6 "protects parties from impairment of their substantial rights without their knowledge and consent. . . ." (*Levy v. Superior Court, supra,* at p. 585, citation omitted.) Given the procedures followed here—in which the CCR settled cases

[9]For example, the CCR's zone manager sent plaintiffs' counsel a partial settlement payment in the *Gauss* case on February 15, 2000, explaining that GAF had refused to pay its share of the agreed-upon consideration. Nevertheless, the Haught family and several plaintiffs in the *In re Complex Asbestos Litigation* case (all of whom were apparently represented by the same counsel) signed releases after February 15, 2000, expressly releasing GAF from liability.

and *then* determined members' shares of responsibility for funding the settlements—it appears GAF had no prior knowledge and did not consent to the obligations imposed upon it by the settlements. Although GAF and the other CCR members contractually agreed to these procedures, this fact does not excuse compliance with the requirements of section 664.6.

Plaintiffs complain this result will jeopardize mass tort settlements, especially in the asbestos context where (plaintiffs assert) the parties often rely on claims managers like the CCR to "process[]" settlements. ▮ But "[t]he statutory procedure for enforcing settlement agreements under section 664.6 is not exclusive. It is merely an expeditious, valid alternative statutorily created. (*Kilpatrick v. Beebe* (1990) 219 Cal.App.3d 1527, 1529 [269 Cal.Rptr. 52].) Settlement agreements may also be enforced by motion for summary judgment, by a separate suit in equity or by amendment of the pleadings to raise the settlement as an affirmative defense." (*Nicholson v. Barab* (1991) 233 Cal.App.3d 1671, 1681 [285 Cal.Rptr. 441]; see also *Levy v. Superior Court, supra,* 10 Cal.4th at pp. 586, fn. 5.; *Robertson v. Chen, supra,* 44 Cal.App.4th at p. 1293 ["Section 664.6 is not the exclusive means of enforcing a settlement agreement; it is simply a summary procedure available when certain prerequisites are satisfied"].) ▮ Our conclusion that plaintiffs cannot use the summary procedures of section 664.6 to enforce settlements signed only by a "claims manager," or other agent of a party, does not preclude plaintiffs from pursuing these other avenues of enforcement.[10] Section 664.6 remains available as a convenient enforcement mechanism for mass tort settlements that satisfy statutory requirements; however, settlements entered into by agents rather than the parties themselves must be enforced by other means. (See *Nicholson v. Barab, supra,* at p. 1681 ["Settlement agreements not enforceable under . . . section 664.6 are governed by the legal principles applicable to contracts in general"].)[11]

Also without merit is plaintiffs' claim that GAF "conceded" the settlements are enforceable under section 664.6 because GAF itself moved to enforce the settlements against the CCR in the *In re Complex Asbestos Litigation* case. This motion does not constitute a "judicial admission" of general enforceability under section 664.6, as plaintiffs suggest, because in the motion GAF specifically disputed the authority of the court to enforce the settlements against GAF, which had not signed the agreements. Rather, GAF's motion insisted that if the settlements were enforceable under section

---

[10]Indeed, plaintiffs did file an amended complaint in the *Gauss* case and filed motions for summary judgment in *Gauss* and the *In re Complex Asbestos Litigation* consolidated cases. We express no opinion on the merits of these alternative arguments.

[11]Because we resolve the appeals on this ground, we do not reach GAF's challenge to the trial court's refusal to allow discovery in the *Haught* and *In re Complex Asbestos Litigation* cases.

664.6, as the court had twice before held in the *Gauss* and *Haught* cases, they should not be enforced against GAF alone but against all CCR member companies under principles of joint and several liability. Given GAF's express and repeated statements that it disputed the trial court's authority to enter judgments against GAF as a nonsignatory to settlements, the motion cannot be construed as a binding judicial admission.

### B. *Section 664.6 Requires Specification of Settlement Terms*

In a related argument, GAF contends the judgments failed to satisfy section 664.6 because the settlements upon which they were based failed to include a material term—namely, the amount GAF was obligated to pay. We agree the judgments cannot stand for this independent, alternative reason.

Section 664.6 merely authorizes the trial court to enter judgment upon a written stipulation signed by the parties (or an oral stipulation made before the court) to settle the action. Here, the *only* writings presented to the trial court that arguably constituted written stipulations to settle the actions were letters sent by the CCR to plaintiffs' counsel before GAF was expelled from the CCR. These letters do not specify the obligation of any individual CCR member, including GAF, to fund the settlement. As a result, in order to affix dollar amounts to the judgments it entered against GAF pursuant to section 664.6, the trial court had to reach beyond these settlement letters and rely on subsequent letters from the CCR (sent, in most cases, after GAF was expelled from the CCR) advising plaintiffs' counsel as to the amount of each settlement it had allocated to GAF.

In general, before judgment can be entered upon a settlement under section 664.6, "there must be a 'writing signed by the parties' that contains the material terms" of the agreement. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 797 [71 Cal.Rptr.2d 265], quoting § 664.6.) The court may consider evidence beyond this writing in deciding a section 664.6 motion, but only to determine what settlement terms the parties *previously* agreed upon. (*Weddington,* at p. 810; see also *Basinger v. Rogers & Wells* (1990) 220 Cal.App.3d 16, 23 [269 Cal.Rptr. 332] [§ 664.6 "by its own terms, only grants the court authority to enter judgment 'pursuant to the terms of the settlement' "].) Because the trial court had no writing specifying material terms of the settlements to be imposed on GAF, it erred in entering judgments for the plaintiffs in these cases pursuant to section 664.6.

While we are sympathetic to plaintiffs' predicament, especially considering the reliance they have historically placed on the CCR's settlement

procedures and the difficulties posed by GAF's recent petition for bank-ruptcy relief, we are constrained by the unambiguous language of section 664.6 and Supreme Court precedent to reverse the judgments.

II. *Remaining Issues Not Ripe for Decision**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Judgments entered against appellant GAF in the *Gauss, Haught* and *In re Complex Asbestos Litigation* cases are reversed, and these matters are remanded to the trial court for further proceedings in accordance with this opinion. The cross-appeals in *Gauss* and *In re Complex Asbestos Litigation* are dismissed. Each side shall bear its own costs on appeal.

McGuiness, P. J., and Corrigan, J., concurred.

A petition for a rehearing was denied December 23, 2002, and the opinion was modified to read as printed above. The petition of respondents Marjorie Gauss et al., for review by the Supreme Court was denied March 19, 2003. Chin, J., did not participate therein.

*See footnote, *ante*, page 1110.