Filed 9/10/15  Eldridge v. Village Trailer Park CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CATHERINE ELDRIDGE,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>        v.<br><br>VILLAGE TRAILER PARK, INC., et al.,<br><br>        Defendants, Cross-complainants and Appellants. | B249456<br><br>(Los Angeles County<br>Super. Ct. No. BC465320) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cesar C. Sarmiento, Judge.  Affirmed.

Horvitz & Levy, David M. Axelrad, Felix Shafir; McKenna, Long & Aldridge, David R. Krause-Leemon and Michelle K. Sugihara for Defendants, Cross-complainants and Appellants.

Campbell & Farahani, Frances M. Campbell and Nima Farahani for Plaintiff, Cross-defendant and Respondent.

INTRODUCTION

Defendants Village Trailer Park, Inc. (VTP), Village Trailer Park, LLC (VTP LLC), and Marc Luzzatto (defendants) appeal from the declaratory judgment in favor of plaintiff Catherine Eldridge that interpreted a settlement agreement entered into on the record in a earlier lawsuit. Exercising de novo review, we conclude that the agreement is not reasonably susceptible of defendants' construction. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The parties*

Eldridge is a resident in space number F-12 of the Village Trailer Park, a mobile home park in Santa Monica (the park), whose tenants are mostly senior citizens. Defendants are the owners or managers of the park. Marc Luzzatto was a principal of both VTP LLC and VTP.

2. *The McNama settlement*

In 2000, residents of the park, including Eldridge, filed a complaint against VTP alleging nuisance and breach of warranty of habitability, among other causes of action, for the defendant's failure to maintain electrical, water, sewage, gas, and other facilities in the park. (*McNama v. Village Trailer Park, Inc.* (Super. Ct. L.A. County, 2003, Case No. SC062254) (*McNama*).) The plaintiffs alleged that the defendant forced the plaintiffs to live in "filth and degradation," and "squalor" by ignoring known hazardous conditions. The complaint also alleged that mobile homes are very costly to move and highly susceptible to damage if moved; there was an extreme shortage of mobile home rental spaces in the park's vicinity, and so unable to move easily, plaintiffs were vulnerable and placed in an unequal bargaining position. The *McNama* complaint alleged further that the defendant had retaliated against the plaintiffs by harassing them, refusing to permit mobilehomes sold or purchased by the plaintiffs to remain in the park, threatening to close the park, and attempting illegally to close the park, among other things.

*McNama* was resolved by a settlement under which VTP paid approximately 60 plaintiffs $1.4 million, in consideration for which the plaintiffs agreed to a general release of VTP, its successors, affiliates, subsidiaries, directors, officers, limited and general partners, managers, and others. (The *McNama* settlement.)

In particular, the *McNama* settlement agreement reads in paragraph 2e: "Defendants (Village Trailer Park, Inc.) will adhere to and be bound by the terms and conditions set forth at the settlement hearing on February 13, 2003. Such terms and conditions are transcribed in the court reporter's transaction of this hearing on page 4, line 11, to page 6, line 16; and page 10, lines 19 to 22. Please see attached copy of aforementioned transcript pages, attached as Exhibit A, as part of this Release and Settlement Agreement."

The following occurred on February 13, 2003:

"MR. CLEELAND: Good morning, your honor. Bruce Cleeland on behalf of the defendants. We're here for the jury trial today, and I understand as to many of the plaintiffs and defense we have a settlement . . .

"MR. HEATER [the *McNama* plaintiffs' counsel]: Yes, we do.

"THE COURT: Who wants to lay out the settlement for the court?

"[¶] . . . [¶]

"MR. CLEELAND: I can offer the initial and confirm the latter part. For payment $1,400,000 on behalf of defendants, the plaintiffs shall dismiss all claims, file a request for dismissal with prejudice . . . in favor of the defendants and all Does. . . ."

The portions of the reporter's transcript from the February 13, 2003 hearing that are specifically cited in the *McNama* settlement read as follows:

"[MR. CLEELAND:] And then counsel had a few provisos as it relates to Catherine Eldridge. The park will allow access as necessary for Eldridge's expert Gary Wells to come in and replace her electrical cord and inspect the park's transformers. . . .

"As to the gas line, the park shall allow access to the plumber to come in and inspect the gas lines.

3

"*As to the lot line, the park will agree to take no action at all which would in any way cause her to have to move her home; that both parties understand that the City of Santa Monica has authority . . . .*

"MR. ALLEN: [attorney for the *McNama* plaintiffs]  - - negotiated in this setting, and both realize that if the City of Santa Monica decided to do something, we're not in power to tell them what to do.  But the park will make no attempt on their own to do anything which would *in any way affect her use of her space or cause her to have to move her home*.

"MR. CLEELAND:  I think that can be qualified as the defendants will initiate – - excuse me.  *Will not initiate on their own accord attempts to move the plaintiff* [*Eldridge*] *on the issue of lot lines or for any other reason absent legal requirement by whatever the appropriate government entity is*.

"MR. ALLEN:  *or somehow cause her to lose her space*.

"THE COURT:  Okay.

"MR. ALLEN:  The second thing is, to the extent that any lot line changes are required by the City, that the Park will make its best efforts to explore all other possibilities to accommodate the City's request before her home is moved.  For instance, if they can move another neighboring home, they will do that prior to exercising any rights to move her home.

"MR. CLEELAND:  Or obligation.

"[¶] . . . [¶]

"THE COURT:  *It's* [*sic*] *on the record.  All this is on the record.  That's why we're doing this.  So we are laying it out*."  (Italics added.)

After an additional discussion concerning maintenance of the park, the court announced:  "*This would be an enforceable settlement on the record.  We'll set an OSC re dismissal on the same date to enforce the terms of the settlement*."  (Italics added.)

The *McNama* settlement, which provided for a general release, was made binding on the parties' heirs, successors, and assigns.

4

3. *The instant lawsuit*

In June 2010, the City of Santa Monica issued a notice of preparation of a draft environmental impact report for defendants' project to close the existing trailer park and replace it with a 353,000 square foot mixed-use development.

A year later, Eldridge filed the instant action against defendants for declaratory and injunctive relief. Eldridge alleged that a controversy had arisen concerning defendants' attempt to close the park and redevelop the property which threatened to cause Eldridge to move her home or lose her space at the park. Quoting from the pages and lines of the reporter's transcript cited in the *McNama* settlement, Eldridge sought a declaration that defendants had no right to, and were precluded from, taking any action that would change Eldridge's lot lines or cause her to move her home. Attached to the complaint as exhibit A was the *McNama* settlement agreement, signed by Eldridge and attorney Allen. Exhibit A does not contain the *McNama* defendant's signature page.

Defendants' answer generally denied the allegations and asserted the affirmative defenses of, inter alia, the statute of frauds, lack of privity, lack of authorization for any agreement with Eldridge, the statute of limitations, and laches.

Interpreting the *McNama* settlement differently than Eldridge did, defendants also cross complained seeking a declaration that they were not obligated by any agreement with Eldridge, and that they had a right to close the park and develop the property in ways that would require Eldridge to vacate her lot. Defendants alleged they never signed any document settling the *McNama* lawsuit on behalf of VTP, or entered into any agreement with Eldridge, and that no officer or other employee or representative of VTP possessing authority to settle the *McNama* action was present in court on February 13, 2003 when the settlement agreement was reached during the hearing. Attached to the cross-complaint was a Notice of Closure of the park, dated July 10, 2006, informing the tenants that the park would close on July 31, 2007 and that "All tenants must vacate the Mobilehome Park before the Closure Date."

Defendants moved for trial preference because they had primary and alternative plans for developing the property. The alternative plan would leave Eldridge's lot F-12

5

undeveloped and so defendants would remain uncertain with respect to their ability to proceed with their primary redevelopment plan until the trial court resolved the merits of her complaint. The trial court granted defendants' trial preference motion.

Defendants then amended their cross-complaint to substitute another tenant, Loretta Newman, for Roe 1. Newman cross-complained against defendants seeking damages. Defendants successfully moved to sever Newman's legal causes of action from Eldridge's equitable claims and to try the equitable issues first.

4. *Trial of the equitable issues raised in both Eldridge's complaint and defendants' cross-complaint*

Trial occurred over two days. On April 2, 2012, defendants called Mr. Cleeland to testify. After completion of examination and cross-examination of Cleeland, the following occurred on the record:

"THE COURT: Anything else?

"MR. KOHN [defense counsel]: No. *I'm hoping we can be done today.*" (Italics added.)

A discussion ensued about obtaining a document from Mr. Cleeland.

"[THE COURT]: You're excused. . . . I may have to call you back to review more documents, but if not, you're excused at this time.

"THE WITNESSS: Thank you.

"THE COURT: *Do you rest*?

"MR. KOHN. *Yes.*

"THE COURT: Do you have any other witnesses?

"MR. KOHN: *Yes. That is the end of the case.*" (Italics added.)

After trial, on June 13, 2012, the court issued an order reflecting its decision that defendants could not terminate Eldridge's lease absent some legal requirement by an appropriate government agency. The court ruled that the extrinsic evidence revealed no ambiguity in the promise that defendants " 'will not initiate on their own accord attempts to move the Plaintiff [Eldridge] on the issue of lot lines *or for any other reason* absent legal requirement by whatever the appropriate government entity is.' " (Italics added.)

6

Specifically, the court declined to read the phrase "or for any other reason" narrowly, as defendants insisted, to mean other reasons relating to the lot line. The court explained that the *McNama* settlement and its words " 'or for any other reason absent legal requirement' " were put on the record by VTP's own counsel, Mr. Cleeland, as a statement to clarify the terms of the settlement. Cleeland first specifically referenced the lot line issue and then added the "or for any other reason" wording. Thus, the court construed the settlement's language more broadly than did defendants.

Next, the trial court ruled that defendants were bound by the *McNama* settlement entered into by their own attorney, Mr. Cleeland, because (1) Cleeland represented to the court he had authority to enter into the settlement agreement as the representative of VTP; (2) defendants ratified the agreement by accepting and enjoying the benefits of the settlement, namely dismissal of the lawsuit, and (3) Cleeland had ostensible authority as attorney for VTP, the plaintiffs changed their position to their detriment by dismissing their lawsuit, and defendants waited eight years before claiming that Cleeland was not their attorney. (The June 13th order.) The court ordered Eldridge to prepare a judgment.

5. *Post-trial proceedings*

Defendants timely requested a statement of decision. (Code Civ. Proc., § 632.)

Eldridge served her "proposed judgment on equitable claims."

Defendants objected to Eldridge's proposed judgment. They argued that the judgment should more properly be interlocutory. Defendants reasoned that the court had limited trial to two factual issues: (1) the interpretation of the *McNama* settlement, and (2) whether the defendants are bound by the terms of the *McNama* settlement. As a result of this limitation on the trial's scope, defendants argued that other issues raised by the pleadings remained to be tried, such as Eldridge's claim for injunctive relief, and defendants' affirmative defenses of statute of limitations, laches, lack of privity, and the statute of frauds, among others.

The trial court scheduled a hearing into whether an interlocutory or a final judgment was appropriate given defendants' objections to Eldridge's proposed judgment.

7

(Cal. Rules of Court, rule 3.1591; Code Civ. Proc., § 577; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2014) § 16:108, p. 16-23.)

Defendants fired Mr. Kohn. Through their new attorneys defendants took the position that trial had not been completed, notwithstanding they had rested on April 2, 2012. Toward that end, defendants filed a statement of decision intimating that issues remained to be determined and echoing their position that the trial court had limited the scope of issues before trial. Defendants also moved for leave to reopen trial.

The trial court rejected defendants' assertion that the court had limited the equitable portion of the trial to the " 'meaning of the [*McNama*] settlement agreement' " and whether Cleeland had the ability to bind defendants contractually. After reviewing the portions of the reporter's transcript cited by defendants, the court explained that the issue before the court in the declaratory relief trial was the meaning of the settlement and its legal effect. The court then explained, "If Defendants believed, at the time of the trial, there were defenses to enforcement of the settlement agreement, they should have raised them. It is clear that the issue was not limited to the 'meaning' of the settlement agreement, as Defendants now contend. . . . [¶] Defendants' attempt, at this time, to add a cause of action to rescind the contract and to add affirmative defenses to enforcement of the contract, fails. *The issue has already been decided*." (Italics added.)

Turning to defendants' objections to Eldridge's "proposed judgment on equitable claims," the trial court overruled them[1] and determined that a judgment, as opposed to an interlocutory ruling, was proper. It reasoned that there were "no issues remaining to be tried as between Plaintiff, Eldridge[,] and Defendants. There are no remaining affirmative defenses to be tried, as the defenses were asserted to the operative complaint, which was *tried in full*." (Italics added.) The only causes of action remaining to be tried were the legal ones asserted by Newman, which did not involve Eldridge. Thus, the court

---

[1] The court also denied defendants' proposed statement of decision as untimely filed, denied their motion for leave to amend the cross-complaint and answer, and overruled their objections to the proposed judgment.

concluded, a final judgment was proper as between defendants and Eldridge. The court entered judgment on the equitable claims.

Plaintiff filed a notice of entry of judgment on equitable claims, after which defendants moved for new trial. In particular, they argued that the judgment was against the law because it violated the statute of frauds, and the court's interpretation of the *McNama* settlement was not supported by the evidence.

The trial court denied the new trial motion. It again rejected defendants' assertion that it had curbed the scope of trial by limiting the introduction of evidence to certain issues. The court stated "Defendant cannot claim that it is entitled to a new trial based on irregularity in the proceedings when its claiming that the irregularity was caused by its own counsel resting VTP's case." Defendants' appeal ensued.

## CONTENTIONS

Defendants contend the *McNama* settlement violates the statute of frauds; the trial court misinterpreted the *McNama* settlement; and defendants are entitled to a new trial on material disputed issues.

## DISCUSSION

1. *The statute of frauds does not invalidate the McNama settlement.*

Defendants contend that the *McNama* settlement violates the statute of frauds (Civ. Code, § 1624, subd. (a)(3)) because it is an agreement for the leasing of real property for a longer period than one year and is not signed by the party sought to be charged.[2] Defendants "do not challenge the trial court's factual finding that VTP's attorney [Cleeland] had agency authority and that defendants ratified the *McNama*

---

[2] Civil Code section 1624 reads in pertinent part: "(a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] . . . [¶] (3) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; such an agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged."

settlement by 'enjoying' the dismissal of the *McNama* lawsuit," the second part of the judgment.

The *McNama* settlement is not automatically invalidated by the fact that it was oral. An oral contract that is required by the statute of frauds to be in writing is voidable, not void. (*Long v. Rumsey* (1938) 12 Cal.2d 334, 344; *Masin v. Drain* (1984) 150 Cal.App.3d 714, 717.) More important, "[t]he rule is established that where a complaint alleges facts showing that the agreement is within the statute of frauds and defendant neither demurs nor objects to the introduction of oral testimony to prove the agreement, he waives the defense of the statute of frauds and may not thereafter raise it on appeal. [Citations.]" (*Coleman v. Satterfield* (1950) 100 Cal.App.2d 81, 84.) Defendants neither demurred nor objected to the introduction of oral testimony to prove the *McNama* settlement. Then, they rested their case. Defendants are precluded from raising this defense on appeal.[3]

Nonetheless, even addressing the merits of defendants' contention, we conclude that the *McNama* settlement does not violate the statute of frauds. The "statute of frauds is inapplicable to an oral settlement agreement stipulated to by the parties before the court following a judicially mandated and supervised settlement conference." (*Kohn v. Jaymar-Ruby, Inc*. (1994) 23 Cal.App.4th 1530, 1534 (*Kohn*).) The reason is that the

---

[3]    Another reason defendants are precluded from raising the statute of frauds lies in equity. Courts " 'have the power to apply equitable principles to prevent a party from using the statute of frauds where such use would constitute fraud.' [Citation.]" (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1057-1058.) " '[A] party will be estopped from relying on the statute where fraud would result from refusal to enforce an oral contract [citation]. The doctrine of estoppel has been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute. [Citation.]' [Citations.]" (*Redke v. Silvertrust* (1971) 6 Cal.3d 94, 101, cert. den. *sub nom. Silvertrust v. Redke* (1972) 405 U.S. 1041.) Defendants are estopped to raise the statute of frauds because, as the trial court found, in reliance on the *McNama* settlement, Eldridge changed her position by dismissing the *McNama* lawsuit.

10

"purpose of the statute of frauds is to prevent fraud and perjury as to extrajudicial agreements by requiring enforcement of the more reliable evidence of some writing signed by the party to be charged. [Citation.] However, the concern addressed by the statute of frauds is not present when, as here, a neutral court participates in the settlement process by assisting the parties to formulate the terms of the settlement. In so doing the court assures itself that the parties are being truthful and acting in good faith, and also that they each comprehend the scope of the agreement." (*Id*. at pp. 1534-1535.) Another reason *Kohn* declined to apply the statute of frauds to judicially supervised settlements was that to do so "would effectively eliminate the elaborate settlement machinery established by the California Rules of Court, the Standards of Judicial Administration and existing case law declaring the public policy that encourages settlement of litigation. [Citation.] The statute of frauds was never intended to bar enforcement of judicially supervised settlements." (*Id*. at p. 1535.)

Defendants' attempt to distinguish *Kohn* is unavailing. They incorrectly assert that *Kohn* and its exception to the statute of frauds "applies *only* where an oral settlement agreement reached by the parties themselves in a judicially supervised settlement conference *satisfies Code of Civil Procedure section 664.6*," and the requirements of section 664.6 were not met here. (Italics added.)

Section 664.6 of the Code of Civil Procedure authorizes the trial court to "enter judgment pursuant to the terms of the settlement" "[i]f parties to pending litigation stipulate . . . orally before the court, for settlement of the case."[4] However, nothing in *Kohn* restricts its rule about the inapplicability of the statute of frauds to section 664.6, notwithstanding that section formed the procedural background of that case. The precise issue in *Kohn* was whether it was proper to *enter* judgment based on the stipulated

---

**4** Code of Civil Procedure section 664.6 reads: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

11

settlement, not as here, how to enforce an already entered judgment. (*Kohn*, *supra*, 23 Cal.App.4th at p. 1533 ["At issue is whether there was sufficient evidence of a binding settlement to permit the trial court *to enter judgment* pursuant to Code of Civil Procedure section 664.6." (Italics added.)].) *Kohn* concluded that (1) the concerns addressed by the statute of frauds are not present in a stipulated settlement in court, and (2) application of the statute of frauds would eliminate rule-governed settlement machinery and undermine case law encouraging settlements. (*Id*. at p. 1535.) *Kohn*'s determination that the statute of frauds is inapplicable to settlement agreements stipulated to before the court involves settlements entered into in court.

A party can seek enforcement of a settlement agreement by means of a separate action rather than to proceed in the same action under Code of Civil Procedure section 664.6. (*Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 433 & 441 [where Code Civ. Proc., § 664.6 inapplicable, "enforcement relief . . . must be by means of a timely separate action."]; accord, *Pietrobon v. Libarle* (2006) 137 Cal.App.4th 992, 996.) Eldridge's lawsuit is a separate action to determine the scope of the *McNama* settlement with the result Code of Civil Procedure section 664.6 is irrelevant,[5] while *Kohn*'s reasoning remains directly applicable here.

Defendants cite *Nicholson v. Barab* (1991) 233 Cal.App.3d 1671 for the proposition that where the requirements of Code of Civil Procedure section 664.6 are not met, the *Kohn* exception does not apply to exempt a settlement from the statute of frauds. However, the settlement in *Nicholson*, which preceded *Kohn*, was neither placed on the record nor memorialized in writing before the parties left the courtroom. (*Nicholson*, at p. 1679.) Therefore, not only was the section 664.6 procedure not met, but the concerns addressed by the statute of frauds were not allayed by the reporter's transcript there.

The foregoing analysis leads us to the conclusion that the statute of frauds does not render the *McNama* settlement invalid notwithstanding that agreement involves a lease

---

[5] Accordingly, defendants' remaining arguments that the *McNama* settlement did not comply with Code of Civil Procedure section 664.6 are unavailing.

for more than one year.  (Civ. Code, § 1624, subd. (a)(3).)  The *McNama* settlement was stipulated to by the parties in *McNama* before, and supervised by, the same judge as the instant action, and recorded by the same court reporter, in lieu of trial.  Defendants do not dispute that the *McNama* settlement was made.  Not only was the *McNama* settlement agreed to on the record, but the language was then included in the written portion of the *McNama* settlement agreement by a reference to the specific pages and lines of the reporter's transcript.  The court heard the terms from both *McNama* parties and announced clearly at that time that the settlement was made "on the record," that the parties were "laying it out," and then ruled that it was "an enforceable settlement on the record."  Therefore, the court assured itself, pursuant to *Kohn*, that the parties were being truthful and acting in good faith, and that they comprehended the scope of the agreement, thus dispelling the concerns addressed by the statute of frauds.  (*Kohn*, *supra*, 23 Cal.App.4th at p. 1534-1535.)  The statute of frauds was "never intended to bar enforcement of judicially supervised settlements."  (*Id*. at p. 1535.)  "[T]he sole 'object of the statute of frauds is to prevent perjured testimony in proof of purported contracts of important types. . . .' " (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 345), and so the *McNama* settlement, having been stipulated to on the record and supervised by the trial court, is not invalidated by the statute of frauds.[6]

2. *The trial court's interpretation of the settlement was not erroneous*.

"A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts.  [Citation.]"  (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810-811.)

The dispute here is over the meaning of the phrase "*or for any other reason*" in the portion of the *McNama* settlement entered into on the record.  Defendants contend the

---

[6]     As the result of our conclusion that defendants waived the issue of the statute of frauds on appeal and that in any event the *McNama* settlement was not invalidated by the statute of frauds, defendants' remaining contentions premised on the statute of frauds are unavailing, including their argument that they should be permitted a new trial on the issue of the statute.

13

settlement prohibits them from terminating Eldridge's tenancy solely for reasons relating to the lot lines, unless a governmental entity were to require them to terminate the tenancy. Citing non-California cases, including a nonpublished Ohio Appellate Court case, defendants argue that the phrase "or any other reason" is ambiguous and does not mean any reason whatsoever; it means any other reason "relating to lot line issues." After receiving extrinsic evidence, the trial court ruled that the phrase "or for any other reason" clearly and unambiguously means that defendants cannot terminate Eldridge's lease absent some legal directive by a government entity. The court also found the phrase was not reasonably susceptible to the meaning defendants advocated because defendants' construction of the settlement -- to limit the reasons for termination to the lot lines only -- required the court to ignore the phrase "or for any other reason." We agree with the court.

"The interpretation of a contract involves 'a two-step process: "First the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step -- interpreting the contract. [Citation.]" [Citation.] The trial court's determination of whether an ambiguity exists is a question of law, subject to independent review on appeal. [Citation.] The trial court's resolution of an ambiguity is also a question of law if no parol evidence is admitted or if the parol evidence is not in conflict. However, where the parol evidence is in conflict, the trial court's resolution of that conflict is a question of fact and must be upheld if supported by substantial evidence. [Citation.] Furthermore, "[w]hen two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact . . . ." ' " (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351, fn. omitted.)

Where there is no conflicting extrinsic evidence, "the appellate court is not bound by the trial court's interpretation and will decide the issue de novo. [Citations.]"

14

(*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 847; see also Civ. Code, 1635, et seq.)

Our independent analysis leads to the ineluctable conclusion that there is nothing ambiguous about the phrase "or for any other reason." It is very clear. Defendants' own attorney Cleeland stated, "*that can be qualified* as the defendants . . . [w]ill not initiate on their own accord attempts to move the plaintiff [Eldridge] on the issue of lot lines *or for any other reason* absent legal requirement by whatever the appropriate government entity is." (Italics added.) The sole limitation in Cleeland's qualification was governmental mandate. Cleeland did not say "or for any other reason relating to the lot lines and legal requirement by whatever the appropriate government entity is." Moreover, "or for any other reason" is not susceptible of defendants' interpretation. To construe that phrase as being limited by the "lot lines" would be either to improperly read into the phrase words that Mr. Cleeland did not use, or to improperly ignore words he did employ. Taking defendants' interpretation to its logical extreme, the phrase "on the issue of lot lines, or for any other reason" would absurdly mean "on the issue of lot lines, or on the issue of lot lines."

Defendants argue, pursuant to the doctrine of *ejusdem generis*, that where "or for any other reason" was preceded by a specifically enumerated reason, namely the lot lines, that the "or for any other reason" phrase must be limited to any other reason *related to the lot lines*. Defendants are wrong. First, "[t]he doctrine of *ejusdem generis* is employed as an interpretive aid only when the language in the contract or statute is ambiguous. [Citation.]" (*Pfeifer v. Countrywide Home Loans, Inc*. (2012) 211 Cal.App.4th 1250, 1277.) Yet, we have determined that the language is not ambiguous. Second, under the doctrine of *ejusdem generis*, " ' "[w]here general words follow the enumeration of particular kinds or classes of persons or things, the general words will, unless a contrary intent is manifested, be construed as applicable only to persons or things of the same general nature or class as those specifically enumerated." ' (*Nygard, Inc. v. Uusi–Kerttula* (2008) 159 Cal.App.4th 1027, 1045, fn. 4 . . . [applying *ejusdem generis* to interpretation of contract].)" (*Huverserian v. Catalina Scuba Luv, Inc*. (2010)

15

184 Cal.App.4th 1462, 1468-1469; see *Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1011-1012.) Yet, a lot line is not a class or a list of enumerated things, but one item. Moreover, "or" is disjunctive and so it juxtaposes the phrase "for any other reason" from "lot lines" thus expanding the reasons.

Next, citing Civil Code section 1641, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other" defendants contend that Cleeland's reference to the "or for any other reason," necessarily was made in the specific context of describing defendants' agreement " '[a]s to the lot line' " and so other reasons must relate to the lot lines. To the contrary, reading the whole of the reporter's transcript recited in the *McNama* settlement, first, plaintiffs' attorney Allen stated that "the park will make no attempt on their own *to do anything* which would *in any way affect her use of her space or cause her to have to move her home*." (Italics added.) This was immediately qualified by defendants' attorney Cleeland to limit defendants' right to move Eldridge based only on legal requirement by a government entity, without reference to the lot lines.

Defendants misrepresent the record when they argue that the trial court erred by failing to consider extrinsic evidence. The trial court manifestly did take into account the extrinsic evidence, as it is required to do (*Wolf v. Superior Court*, *supra*, 114 Cal.App.4th at p. 1351 [reversible error for trial court to refuse to consider extrinsic evidence on belief that contract's language is facially unambiguous]), and concluded that the evidence did not reveal an ambiguity. The court stated, "*Despite all of the evidence and arguments presented to the court* there is no way around this simple, unambiguous and straightforward declaration, it means what it says." (Italics added.) Having concluded based on the extrinsic evidence that there was no latent ambiguity, the court was not required to admit the extrinsic evidence as an aid to interpreting the *McNama* settlement. (*Wolf*, at p. 1351.)

Lastly, defendants contend that the trial court's interpretation improperly created new interests in real property, such as a "perpetual lease" or a "life estate." However, the trial court did not create anything; it merely interpreted defendants' work. The parties

16

agree that the court said nothing about a life estate. In any event, Eldridge appears to concede that "any other reason" cannot shield illegal conduct and that if she breaches any provisions of the Santa Monica City Charter provisions concerning rent controlled units, defendants would nonetheless have the right to terminate her tenancy. (Santa Monica City Charter, § 1806.)

3. *Defendants were not prevented from putting on evidence at trial.*

Defendants contend that the trial court deprived them of their due process right to a fair trial "by not permitting them to present evidence on all material disputed issues," such as their affirmative defenses. The trial court did no such thing; defendants rested their case and emphasized the need for a speedy decision because of a "timing concern with the City's approval process" for defendants' development plans. Indeed, immediately before defendants rested, the trial court told Cleeland it might have to call him back to the stand, indicating the court was contemplating more trial. Nor did defendants provisionally rest. Mr. Kohn stated, "*That is the end of the case*." (Italics added.)

17

DISPOSITION

The judgment is affirmed.  Respondent is to recover costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




ALDRICH, J.



We concur:




KITCHING, Acting P. J.




JONES, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by Chief Justice pursuant to article VI, section 6 of the California Constitution.