Filed 11/23/21  King v. Downtown Prime CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JENNA KING,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DOWNTOWN PRIME, LLC, et al.,<br><br>    Defendants and Respondents. | B307274<br><br>(Los Angeles County<br>Super. Ct. No. BC682898) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Randolph M. Hammock, Judge.  Affirmed.

Mortimer Law Firm and Thomas F. Mortimer, Jr., for Plaintiff and Appellant.

Larson & Gaston and Gloria G. Medel for Defendants and Respondents.

_____

Plaintiff and appellant Jenna King (King) appeals from a judgment entered in favor of defendants and respondents Downtown Prime, LLC (DTP), Moses Babazadeh (Babazadeh), David Baradarian (Baradarian), and Pedram Yadision (Yadision) following their successful motion to enforce a settlement agreement. (Code Civ. Proc., § 664.6.)[1]

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Complaint*

On November 8, 2017, King and nine other individuals filed a complaint against defendants concerning certain rental units in downtown Los Angeles. According to the complaint, between January 2016 and July 2016, DTP entered into commercial leases with King and nine others. King and the other nine individuals alleged that they had rented units from DTP for residential, not commercial, use. They claimed that DTP through its agents (Babazadeh, Baradarian, and Yadision) misrepresented the residential status of the rental units, which were only permitted for commercial use.

At the time King filed the complaint, she was represented by Basta, Inc. (Basta).

*Mediation*

On June 24, 2019, the parties participated in a mediation with Hon. Richard A. Stone. King attended the mediation. Although the mediation did not result in a settlement that day, the parties continued to negotiate. On June 27, 2019, Judge Stone issued a short form settlement agreement setting forth his

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

proposal. That same day, King met with her lawyers, accepted the mediator's proposal, and executed the short form settlement agreement.

As is relevant to the issues on appeal, in the short form settlement agreement, defendants agreed to pay all 10 plaintiffs $1 million in exchange for a complete release of all of their claims. In addition, each plaintiff agreed to "sign stipulated judgments for possession of the premises which shall not be entered unless and until plaintiffs fail to move out of the premises timely. All plaintiffs must move out of the premises on or before 120 days after execution of the long form settlement agreement."

While the nine other plaintiffs executed the long form settlement agreement, King never did.

*Basta's Withdrawal from Representing King*

After King signed the short form settlement agreement, a dispute arose between King and Basta regarding the allocation of settlement funds.[2] At some point during this dispute, King took the position that she had not signed the short form settlement agreement, that she was not bound by its terms, and that she would no longer be represented by Basta.

Basta filed a motion to be relieved as counsel, which the trial court granted on November 12, 2019.

On or about November 29, 2019, King retained a new attorney to represent her in this matter.

---

[2]    As set forth above, the settlement agreement did not indicate each of the 10 plaintiff's share of the settlement. It appears that Basta received the monies and was going to "work[] out the logistics" with the plaintiffs.

*Defendants' Motion to Enforce the Settlement Agreement*

Meanwhile, because King refused to comply with the terms of the settlement, on November 22, 2019, defendants filed a motion to enforce the settlement agreement. Attached to the motion is a copy of the executed short form agreement.

*King's Opposition*

King opposed defendants' motion, arguing that the settlement agreement was unenforceable because (1) it failed to include her proper signature and consent to settle, and (2) it did not include the specific settlement allocation for each of the 10 plaintiffs. In support, King submitted her own declaration and a declaration from her son, Brandon King (Brandon).[3] Both King and Brandon declared that at the time of the settlement, King had been "under tremendous emotional pressure and stress."

Also in support, King submitted a declaration from her attorney. Attached to his declaration was (1) a copy of the durable power of attorney she had previously provided to Basta naming Brandon as her agent, (2) e-mails received by King regarding this matter, (3) correspondence from King's new attorney to the mediator, and (4) copies of text messages received by Brandon regarding this matter.

*Initial Hearing on Defendants' Motion*

At the initial hearing on defendants' motion, the trial court requested additional information regarding King's review and execution of the settlement agreement. After King agreed to a limited waiver of the attorney client privilege, defense counsel

---

[3] Because Brandon and his mother share the same last name, for clarity we refer to him by his first name. No disrespect is intended.

was ordered to provide the trial court with a declaration from Basta regarding King's review and execution of the settlement agreement.

*Declaration from Basta*

On February 18, 2020, defendants filed a declaration from Eric M. Post, King's former attorney at Basta. Mr. Post attested that he "went over the terms of the Settlement Agreement [with King]" and that she "signed the settlement agreement in the presence of [himself] and co-plaintiff[s]."

Mr. Post also stated that at the same time King signed the short form settlement agreement, she signed a Medicare form necessary for the release of settlement funds.

*Continued Hearing on Defendants' Motion*

At the continued hearing, the trial court granted defendants' motion. In so ruling, it found that King had not come forward with any credible evidence that her signature on the short form settlement agreement was forged. It further found that her durable power of attorney did not negate her ability to execute the settlement agreement on her own behalf. In addition, the trial court rejected King's contention that the settlement agreement was unenforceable because it did not specify the allocation of settlement funds among the 10 individual plaintiffs. Finally, after reviewing Mr. Post's declaration, the trial court found that King was legally competent when she knowingly and voluntarily signed the short form settlement agreement, with full knowledge of its consequences.

*Judgment and Appeal*

After granting defendants' motion,[4] judgment was entered. The judgment incorporates the terms of the short form settlement agreement. It further provides that King "shall move out of the premises . . . on or before 120 days from entry of this Judgment." Attached to the judgment is a copy of the short form settlement agreement signed by all 10 plaintiffs, including King.

King's timely appeal ensued.

**DISCUSSION**

I. *Standard of review and relevant law*

Section 664.6 empowers a trial court, if the parties so agree, to "retain jurisdiction over the parties to enforce [a written] settlement until performance in full of the terms of the settlement." (§ 664.6.) When ruling on a motion to enforce a settlement under section 664.6, a trial court must determine whether the parties entered into a valid and binding settlement of the case. (*Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 994.) A trial court hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810 (*Weddington*).)

---

[4]     After the trial court granted defendants' motion, defendants submitted a proposed judgment. King objected to the proposed judgment. In support, she submitted an unsworn letter from a medical provider that indicated that "[a]t times, when the situation around her becomes too stressful or overwhelming, it is the nature of her conditions for her to dissociate[,] and to suffer significant loss of concentration, attention and cognitive abilities."

6

As our Supreme Court has explained:  "Past cases have established that, in ruling upon a section 664.6 motion for entry of judgment enforcing a settlement agreement, and in determining whether the parties entered into a binding settlement of all or part of a case, a trial court should consider whether (1) the material terms of the settlement were explicitly defined, (2) the supervising judicial officer questioned the parties regarding their understanding of those terms, and (3) the parties expressly acknowledged their understanding of and agreement to be bound by those terms.  In making the foregoing determination, the trial court may consider declarations of the parties and their counsel, any transcript of the stipulation orally presented and recorded by a certified reporter, and any additional oral testimony.  [Citations.]"  (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911.)

Generally speaking, before judgment can be entered upon a settlement under section 664.6, "there must be a 'writing signed by the parties' that contains the material terms" of the agreement.  (*Weddington*, *supra*, 60 Cal.App.4th at p. 797.)

A trial court's factual findings on a motion to enforce a settlement pursuant to section 664.6 will not be disturbed if supported by substantial evidence.  (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.)  Evidence is "substantial" if "'"a rational trier of fact could find [the evidence] to be reasonable, credible, and of solid value"'" and, in assessing the substantiality of the evidence, we must "'"view[] the evidence in the light most favorable to the [decision.]" [Citation.]'" (*Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.5th 1084, 1106.)

7

Where the trial court must interpret the settlement agreement in order to rule on a motion pursuant to section 664.6, that interpretation is subject to de novo review only if the contract language is unambiguous and all extrinsic evidence is undisputed, otherwise, the substantial evidence standard of review applies. (*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 713.)

II. *The trial court properly granted defendants' motion*

Applying these legal principles, we conclude that the trial court properly granted defendants' motion to enforce the settlement agreement. King attended the mediation and then, as evidenced by Mr. Post's declaration and her signature on the document, voluntarily and knowingly signed the short form settlement agreement.

A. King's contradictory declaration

Urging us to reverse, King directs us to her declaration in which she stated that she did not sign the settlement agreement and does not recall anyone from Basta explaining its terms and conditions to her. Applying the appropriate standard of review, King's contradictory and self-serving declaration is insufficient to compel reversal.[5]

B. Durable power of attorney

King further argues that the durable power of attorney precluded her from consenting to the short form settlement agreement. According to King, because she granted Brandon

---

[5] It is curious that King does recall signing the Medicare Release form. Why would she have signed that form, which is necessary only for the disbursement of settlement funds, if she had not agreed to the settlement?

8

power of attorney, he had to sign the short form settlement agreement; she could not do so on her own behalf.

Probate Code section 4123, subdivision (a), provides, in relevant part: "In a power of attorney under this division, a principal may grant authority to an attorney-in-fact to act on the principal's behalf with respect to all lawful subjects and purposes or with respect to one or more express subjects or purposes." (Prob. Code, § 4123, subd. (a).) Under general agency rules, an "attorney in fact" may be authorized to do any acts that the principal may do, except those requiring a principal's personal attention. (Civ. Code, § 2304.) Thus, Brandon was authorized to act on King's behalf. But there is no legal authority to support King's contention that by giving Brandon power of attorney, she no longer was able to consent to agreements on her own.

C. Alleged incapacity to consent

Moreover, King asserts that she was incapable of agreeing to the terms of the settlement.

Probate Code section 810 provides, in relevant part, that there is "a rebuttable presumption affecting the burden of proof that all persons have the capacity to make decisions and to be responsible for their acts or decisions." (Prob. Code, § 810, subd. (a).) Subdivision (b) continues: "A person who has a mental or physical disorder may still be capable of contracting . . . and performing other actions." (Prob. Code, § 810, subd. (b).) And, subdivision (c) provides: "A judicial determination that a person is totally without understanding, or is of unsound mind, or suffers from one or more mental deficits so substantial that, under the circumstances, the person should be deemed to lack the legal capacity to perform a specific act, should be based on evidence of a deficit in one or more of the person's mental

9

functions rather than on a diagnosis of a person's mental or physical disorder." (Prob. Code, § 810, subd. (c).)

Here, there is no evidence that King lacked the capacity to sign the short form settlement agreement. While she may have been "under tremendous emotional pressure and stress," there is no indication that this stress rendered her incompetent to enter into the settlement. The unsworn letter from a medical provider offered in support of her objections to the proposed judgment is insufficient because (1) it was not submitted in connection with her opposition to defendants' motion, (2) it was not filed under penalty of perjury, and (3) it does not support King's contention that she was incapable of entering into a contract at the time she executed the short form settlement agreement.

D. Specificity of material terms

Citing *Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110 (*Gauss*), King argues that the settlement agreement's failure to expressly include the individual allocations for each of the 10 plaintiffs renders the agreement unenforceable. King's reliance upon *Gauss* is misplaced. In that case, the Court of Appeal reversed a judgment entered upon purported settlement agreements because (1) the settlement agreements did not contain the signature of a settling party, and (2) the agreements did not specify a material term, namely the objecting party's share of the settlement. (*Gauss*, *supra*, at pp. 1121, 1123.) In contrast, in the instant case, the settlement agreement spells out defendants' obligations to fund the settlement, including the specific dollar amount. That the settlement agreement does not include the specific allocations as to each of the 10 plaintiffs does not invalidate the agreement; this was a global settlement among all of the parties. Under these circumstances, the settlement

10

agreement was not required to set forth each plaintiff's specific allocation. (See, e.g., *Dole Food Co., Inc. v. Superior Court* (2015) 242 Cal.App.4th 894, 917 [approval of good faith settlement does not require individualized allocations among plaintiffs].)

King's disagreement with Basta regarding her specific allocation is not a basis to invalidate the settlement agreement. She claims that because she "spent the most time and resources [on] upgrading . . . her unit . . . and was the catalyst in bringing this action," she is entitled to a larger settlement allocation. Regardless of whether that is true, that is an issue for her to resolve with Basta; it does not invalidate the settlement agreement reached here with defendants.

E. Terms of the judgment

King objects to certain terms of the judgment. Specifically, she argues that the judgment improperly attaches and incorporates Exhibit 1 to it. That exhibit is the short form settlement agreement that King knowingly and willingly signed. Her argument notwithstanding, she agreed to paragraphs 12, 13, and 14 of Exhibit 1, and those terms are incorporated into the judgment.

King contends that the judgment somehow binds her to the terms of the long form settlement agreement, which she did not sign. For example, she argues that she "never agreed and strenuously objected to a stipulated time to leave her home and never agreed to sign a stipulated judgment for possession of the premises" as set forth in the long form settlement agreement. But she did agree to those terms in the short form settlement agreement. At paragraph 5, the short form settlement agreement provides that each plaintiff (including King) shall sign a stipulated judgment for possession. The short form settlement

11

agreement also sets forth a date by which she must move out of the premises, namely 120 days after execution of the long form settlement agreement. Her refusal to sign the long form settlement agreement does not excuse her from her obligations under the terms of the short form settlement agreement. Thus, the move out language, requiring her to vacate the premises on or before 120 days from entry of judgment, was properly included in the judgment.

In sum, the judgment binds King to the terms of the short form settlement agreement, which she signed; it does not bind her to any terms taken from the long form settlement agreement that she did not sign.

**DISPOSITION**

The judgment is affirmed. Defendants are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.

ASHMANN-GERST

We concur:


_____, J.

CHAVEZ


_____, J.

HOFFSTADT

12