Filed 3/25/24  Matter of Talassazan Children's Trust CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In the Matter of the Talassazan Children's Trust. | B323669 |
| | (Los Angeles County Super. Ct. No. 19STPB11199) |
| MICHAEL R. AUGUSTINE, | |
| Plaintiff and Respondent, | |
| v. | |
| ABRAHAM TALASSAZAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Deborah L. Christian, Judge.  Affirmed.

Vivoli Saccuzzo and Michael W. Vivoli for Defendant and Appellant.

Gutman Law, Alan S. Gutman, and Matthew E. Hess for Plaintiff and Respondent.

_____

Non-parties Albert Talassazan and Mojgan Larian were married from 1992 to 2010. They have five children. After a plethora of litigation between, on the one hand, Mojgan and her brother Isaac Larian and, on the other hand, Albert, his brother appellant Abraham Talassazan, and others, the parties decided to settle all disputes through the creation of a trust that would benefit Mojgan and Albert's five children.[1] The parties entered into a written settlement agreement providing for the creation of the Talassazan Children's Trust, which would be funded with initial payments of $500,000 each from Isaac and Abraham. Both the Settlement Agreement and the Trust Agreement creating the Trust also provided that Abraham was required to make 82 monthly payments of $5,000. Attached to the Settlement Agreement was a stipulated judgment against Abraham for $910,000, less any amounts paid into the Trust. The parties agreed that Mojgan could apply for entry of this Stipulated Judgment should Abraham breach any of the payment obligations contained in the Settlement Agreement.

Abraham made 22 monthly payments before refusing to make any more, claiming that the distributions made by the Trustee violated the terms set forth in the Trust Agreement. After Mojgan unsuccessfully attempted to have the Stipulated Judgment entered, the Trustee filed a petition for instructions, construction and modification of the trust instrument, transfer of

_____

[1] We refer to certain individuals by their first name because they share a surname with other individuals discussed herein.

right to payments to the trust, and for entry of judgment pursuant to stipulation for civil judgment. The probate court entered an order granting the petition, finding that Abraham was not permitted to suspend his payments. The order also stated that judgment was entered against Abraham for $300,000.

On appeal, Abraham contends the probate court erred in entering this order because: (a) the court's order was barred by the doctrine of issue preclusion; (b) the Stipulated Judgment could be entered only in the case that produced the Settlement Agreement; (c) the court erred in determining Abraham lacked the right to suspend payments; and (d) there is no evidence to support the court's conclusion that Abraham breached the Trust Agreement.[2] We discern no error and therefore affirm.

---

[2] In his opening brief, Abraham contends he is appealing from "the probate court's entry of a stipulated judgment executed as part of a settlement of a prior superior[] court action." However, because Abraham's Notice of Appeal states he is appealing "The Probate Court's August 1, 2022, Ruling on Submitted Matter, in which the Probate Court GRANTED Petitioner's petition, reserving for future decision the Court's award of attorney fees and costs to Petitioner," and because, as discussed below, nothing in the record shows that the Stipulated Judgment was actually entered, we deem the appeal to be from the August 2022 order.

3

**A.** *The Settlement Agreement*

In January 2016, Isaac and Mojgan, on the one hand, and Albert, Abraham, and others, on the other hand, entered into a settlement agreement. As relevant to this appeal, the Settlement Agreement provided that, as a resolution to multiple lawsuits the parties had filed against each other, the "Talassazan Children's Trust" would be created for the benefit of Albert and Mojgan's children. Both Abraham and Isaac would settle the Trust with initial payments of $500,000 each, with Abraham additionally paying $5,000 a month until November 2022, the month the youngest of the children turned 18. The parties to the Settlement Agreement agreed and acknowledged that the Trust was a third-party beneficiary to the Settlement Agreement. A copy of the Trust Agreement was attached as an exhibit to the Settlement Agreement, but the terms of the Trust Agreement were not incorporated into the Settlement Agreement.

Also attached to the Settlement Agreement was a stipulated judgment against Abraham, in the amount of $910,000 less any amounts Abraham paid into the Trust. The parties agreed that "Mojgan Larian may file the Stipulated Judgment on behalf of the Children if . . . [¶] . . . Abraham Talassazan breaches any of his payment obligations hereunder and after being provided notice to cure for a period of five (5) business days followed by Ex Parte notice of an application to enter the stipulated judgment." The parties also agreed that "pursuant to C.C.P. § 664.6 and applicable law, Judge Helen I. Bendix and/or

---

[3] We limit our summary to the facts and procedural history relevant to the issues appellant raises on appeal.

the court in the Madison Action[4] (*i.e.*, Judge Gail Ruderman Feuer or any subsequent judge assigned of [*sic*] the Superior Court of the State of California, County of Los Angeles) shall retain jurisdiction over each and every Party to enforce the settlement until performance in full of the terms of the settlement. Each Party agrees that they are subject to the jurisdiction of this Court for these purposes and this Agreement is enforceable under C.C.P. § 664.6. The Court, upon motion of any Party, may enter judgment pursuant to its terms." Nothing in the Settlement Agreement precluded other means of enforcement.

### B.     *The Trust*

In July 2016, Abraham and Isaac created the Trust by signing the Trust Agreement and each transferring $500,000 to Augustine, the Trustee, to be held as part of the "trust estate" on the terms and conditions set forth in the Trust Agreement. As relevant to this appeal:

In Article 1, Augustine acknowledged that he held the Trust estate for the benefit of Albert and Mojgan's five children. Article I also recited that the Trust was created pursuant to the January 2016 Settlement Agreement entered into by Isaac on the one hand, and Albert, Abraham, and others on the other hand.

Article 3 provided that Abraham would make monthly payments of $5,000 to the trust until November 2022, when the last of Albert and Mojgan's children would turn 18. The payments were "to be used by the Trustee for the Children's

---

[4] The settlement agreement defined the "Madison Action" as an August 2013 case brought by Mojgan against Abraham and others, with case number BC518866.

5

proper health, education, support, maintenance, food, clothing, entertainment, after school activities, summer camp and other items for the Children's welfare and well-being as the Trustee, in the Trustee's sole discretion, deems necessary."

Article 5.1.1 provided that the "Trustee shall pay to or apply for the exclusive benefit of the Children, or any one of them, as much of the net income and principal of the trust estate as is necessary in the Trustee's sole discretion to pay for the essential living expenses of the Children ('Essential Living Expenses' as defined by the categories set forth in Attachment A)."[5] It also provided that "[i]n order to expedite such payments the Children's mother shall provide to the Trustee, within the first five (5) days of each calendar year, a proposed budget of the Essential Living Expenses for that year, limited to the categories set forth in Attachment A (unless otherwise directed by the Trustee). The Trustee shall have the sole power and authority to modify the proposed budget as he deems appropriate, after discussing same with the Children's mother. Once the annual budgetary process is completed, the Trustee shall make the payment directly to the provider of the goods or services where feasible. If a direct payment to the provider is not feasible or

_____

[5] Attachment A contained an "enumerated and exclusive list of categories of expenses that comprise the Essential Living Expenses of the Children for which the trustee is authorized to disburse funds pursuant to Section 5.1.1 of the Children's Trust," and listed 22 categories. For the categories of "Car Insurance for the Children and Children's Mother," "Car Repairs," and "Vehicle Gas," Attachment A stated that "to the extent that they cover the Children's mother, they shall be limited to two-thirds of her car insurance, two-thirds of her vehicle gas, and two-thirds of car repair expense."

deemed by the Trustee to be too burdensome, the Trustee shall distribute an appropriate amount to a separate bank account, which shall be used by the Children's mother via bank debit card solely for the Children in such amounts and for such purposes as have been approved by the Trustee.  The Children's mother shall retain, and provide to the Trustee upon request, any receipts associated with such use.  In making his determination, the Trustee may approve payments that are greater for some beneficiaries than others, even to the exclusion of one or more beneficiaries if the Trustee deems this appropriate in light of the size of the trust estate and the probable present and future needs of the beneficiaries.  Distributions under this Paragraph 5.1.1 shall be charged against the Trust as a whole and not against the ultimate distributive share of any Child."

Article 5.1.2 provided that the "Trustee may, to the extent the Trustee, in the Trustee's sole discretion, deems appropriate, make discretionary payments of principal to or for the benefit of any Child, in order to remedy any hardship or special need arising from illness, disability or other necessity in addition to the authorized categories of disbursement contained on [*sic*] Attachment A."

Article 8 provided that the "Trustee shall report to the Grantors when, how and as requested by the Grantors."[6]

## C.    *Abraham Suspends Monthly Payments*

In December 2017, a domestic violence restraining order was issued against Albert, protecting Mojgan and their minor children.  Albert was granted weekly visitation for three hours, in

_____

[6] The Trust Agreement referred to Abraham and Isaac as the "Grantors."

7

a therapeutic setting. According to a statement of facts in an appeal Albert filed, Albert subsequently tried to modify the visitation order after the parties could not agree on a schedule or therapeutic setting for the visits. On May 25, 2018, the court ordered that Albert would have "professionally monitored visitation with the minor children for 2 hours each Sunday at the N.E.S.S. Center."

In June 2018, Abraham's attorney sent a letter to Augustine, claiming that: (1) Mojgan had breached the Settlement Agreement and the Trust Agreement because she "recently initiated certain legal proceedings against Albert Talassazan, and also filed documents with the bankruptcy court despite the parties' agreement to resolve all claims against Albert Talassazan's bankruptcy estate"; and (2) Mojgan had been receiving from the Trust $15,000 a month, "plus thousands of dollars of other unexplained distributions directly to Mojgan Larian, with no indication these payments have inured to the benefit of the children for whom the Trust was formed." Abraham's attorney informed Augustine that, based on these purported breaches, Abraham was suspending his $5,000 monthly payments "unless and until Mojgan Larian cures her breaches of the Settlement Agreement and her violation of the express purpose of the Trust through the referenced, unexplained distributions to Mojgan Larian." The attorney also requested any documentation the Trustee had "substantiating" the $15,000 monthly payments to Mojgan.

### D. *Mojgan Unsuccessfully Attempts to Enter the Stipulated Judgment*

In January 2019, Mojgan moved to enforce the Settlement Agreement, contending that Abraham had stopped making the

monthly payments required thereunder.  Abraham opposed the motion, claiming he ceased payments because Mojgan herself had not complied with the terms of the agreement—specifically, she failed to provide the Trustee with receipts for the children's living expenses.  Abraham also accused the Trustee of failing to provide him with the reports provided for in the Trust Agreement.  In her reply, Mojgan argued that Abraham's payments were not conditioned on her compliance with the Trust rules, and she included a declaration from the Trustee, who claimed to have provided Abraham with an accounting in 2016 and 2017.[7]

In February 2019, the superior court (Judge Robert S. Draper) denied Mojgan's motion to enforce the Settlement Agreement "without prejudice to [Mojgan] Larian's right to renew the motion if payments are not received after Larian has fulfilled her obligations under the contract."  The court found Mojgan was "incorrect to argue that her alleged failure to comply with the trust's accounting requirements do not matter to this motion" because a " 'party complaining of the breach of a contract is not entitled to recover therefor unless he has fulfilled his obligations. He who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.  In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional.' "

_____

[7] The record contains neither the motion nor reply filed by Mojgan.  Our description of her arguments comes from the superior court's description of them in its order denying the motion.

9

**E.** *Augustine Provides Receipts; Abraham Fails to Resume Payments*

In July 2019, Augustine's attorney sent Abraham's attorney a letter stating that, while Augustine disagreed with Abraham's "assessment of breaches," "in an effort to resolve the dispute concerning" Abraham's refusal to pay, he was providing receipts covering January through June of 2019. The letter also included a table dividing the expenses into eight broad categories ("Food," "Clothing," "Medical/pharmacy/personal care," "Car/car insurance/car repairs/gas/uber," "Gardener/cleaning lady," "Education and supplies," "Travel/phone/entertainment," and "Miscellaneous sundries") and listed the amount of money spent for each category. The letter stated that, unless Abraham was prepared to become current on his monthly payments to the Trust, Augustine intended to "file a petition for probate court supervision of the Trust which shall also seek, amongst other things, to enforce your client's obligation to pay what he is obligated to pay pursuant to the trust instrument and the Settlement Agreement."

In August 2019, Abraham's attorney responded to the July 2019 letter, pointing out that: (1) many of the expenses paid for by the Trust were impermissible under the express terms of the Trust Agreement; and (2) the receipts provided did not match up with the amounts listed in the table. The letter continued that because the funds of the Trust were being expended for impermissible uses, it was "not likely" Abraham would be resuming his monthly payments.

**F.** *Augustine Petitions the Probate Court*

In November 2019, Augustine filed a verified petition for "instructions, construction and modification of the trust

10

instrument, for transfer of right to payments to the trust, and for entry of judgment pursuant to stipulation for civil judgment." The petition recited the background of the creation of the Trust, Abraham's obligations to make 82 monthly payments of $5,000 to the Trust, and his refusal to make further payments after his twenty-second such payment. The petition attached the June 2018 letter from Abraham's attorney but claimed that the "purported basis for 'suspending any further monthly payments to the Trust' appears to be pretextual, in retaliation for Mojgan seeking and obtaining a restraining order against Albert, and the court's imposition of conditions on Albert's visitation rights with the children/beneficiaries." The petition went on to argue that Abraham lacked the right to suspend payments based on distributions to Mojgan because the Trustee had the "sole discretion" to determine necessary payments. The petition also pointed out that the Settlement Agreement permitted only Mojgan to request the entry of the Stipulated Judgment. It explained that when Mojgan attempted to do so by moving for entry of the Stipulated Judgment in case number BC518866, her attempt was "ineffective."

Therefore, the petition asked the court to: (a) "Modify the Trust to enable the Trustee to enforce the provision of the Settlement Agreement which requires the monthly payment of $5,000 by Abraham;" (b) "Order the transfer of the outstanding and future payments from Abraham to the Trust;" (c) "Instruct the Trustee to prosecute Abraham for his breach of the Settlement Agreement and obligation to the Trust (i.e., to have the Stipulated Judgment entered against Abraham);" (d) "Enter judgment against Abraham in the amount of $300,000 plus prejudgment interest;" and (e) "interpret, construe and declare

11

that the last sentence of Article 8 of the Trust instrument, which states, '[i]n addition to the foregoing, the Trustee shall report to the Grantors when, how and as requested by the Grantors,' does not provide Abraham with the right to dictate how the Trustee administers the Trust, nor provide Abraham with the right to suspend payments."

In February 2020, Abraham objected and responded to the petition.

### G.    *The Court Grants the Petition*

#### 1.    **Pre-Trial Stipulation**

In November 2020, Augustine and Abraham entered into a stipulation, providing that Augustine and Abraham "stipulate and agree to have this case determined by the Court, as follows."

Section I of the stipulation set forth the factual background regarding the formation of the Trust, Abraham's obligations to make 82 monthly $5,000 payments, and the fact that he had made only 22 such payments.

Section II of the stipulation listed six issues to be determined by the court: (1) "Whether the Petitioner is entitled to an order modifying the Trust to enable the Trustee, as opposed to Mojgan, to enforce the provision of the Settlement Agreement which requires the monthly payment of $5,000 by Abraham;" (2) "Whether the Petitioner is entitled to an order that outstanding and future payments from Abraham be transferred to the Trust;" (3) "Whether the Petitioner is entitled to enforce the Stipulated Judgment against Abraham;" (4) "Whether the Petitioner is entitled to judgment against Abraham in the amount of $300,000 plus prejudgment interest;" (5) "Whether the Petitioner is entitled to a declaration that the last sentence of Article 8 of the

12

Trust instrument, which states, '[i]n addition to the foregoing, the Trustee shall report to the Grantors when, how and as requested by the Grantors,' does not provide Abraham with the right to dictate how the Trustee administers the Trust, nor provide Abraham with the right to suspend payments;" and/or (6) "Whether Abraham was excused from making the $300,000 in monthly installment payments, or legally justified in not making the payments."

Under a section entitled "Standing, Jurisdiction and Venue," the parties also stipulated that Augustine "has standing under Probate Code § 17200(a), this Court has jurisdiction and is the proper venue under Probate Code § 17005(a)."

## 2. Trial

### (a) Preliminary Remarks

A one-day trial took place in March 2022. During opening statements, when Abraham's lawyer accused Augustine of failing to follow the dictates of Article 5.1.1, the court responded that "whether or not there was a proper use of the [Trust] funds, whether there was a breach of a fiduciary duty [from the Trustee] based upon what's written in [Article] 5.1.1, that's really not before me." The court also noted that the Settlement Agreement and the Trust Agreement "are two stand alone [*sic*] documents" and that, while the Settlement Agreement attached a blank copy of the Trust Agreement, it was "a stand alone [*sic*] Settlement Agreement, which does not carry-over to the Trust." When Abraham's counsel argued that the Settlement Agreement obligated Abraham to make $5,000 monthly payments and that the remedy for nonpayment was entry of the Stipulated Judgment, the court stated such a remedy did not "preclude

13

remedy of that breach in the Trust [Agreement].  That's a separate instrument."

### (b)   Augustine's Testimony

Augustine called no witnesses; Abraham called Augustine to testify.  Augustine testified that he had spoken with Abraham several times before he ceased making payments and when he discussed the payments the Trust was making to Mojgan, Abraham "did not indicate any disapproval."  Augustine did not recall Abraham asking for expense receipts before he retained counsel.  Augustine also testified that he had "one conversation" with Abraham about the termination of payments, and Abraham "complained about a couple of things":

Abraham's first complaint was that "there was an ongoing family law dispute between Mojgan Larian and his brother.  That was the subject of a fair piece of family law litigation, eventually a restraining order, eventually an unsuccessful appeal.  None of which I was involved in, but which was going on in the background. [¶] . . . [¶] The implication was from Mr. Talassazan that because his brother was not visiting the children, you know, that was a factor in the termination of the payments."

Abraham's second complaint was that "he was unhappy with the receipts provided in the same vain [*sic*] as [his counsel] Mr. Vivoli's letter.  In other words, he didn't deviate much from your letter, counsel.  He was complaining about the gardener.  He was complaining about certain other things saying, 'These were Mojgan's expenses and were not essential living expenses.' "  Abraham complained Mojgan "live[d] extravagantly" and had a "history [of] being a spend thrift [*sic*]."

On the subject of Mojgan's efforts to have the stipulated judgment entered, Augustine professed awareness of the attempt,

14

and acknowledged providing a declaration at the request of Mojgan's counsel "relating to the facts as to when the payments started, when they stopped, that sort of thing." As Trustee, he believed he had a duty to cooperate with Mojgan in attempting to collect monies he believed were owed to the Trust.

When the court asked Augustine whether Abraham had another motive to cease his monthly payments besides the lack of expense receipts, Augustine responded, "That could very well be, but I don't know -- I have to concur with [my counsel] Mr. Gutman. I don't know if that's really before you today, Mr. Talassazan's motivation. Obviously, I'm going to answer your questions. But it's only a few conversations, and I am not an authority on it." When the court followed up by stating that "if the motivation was receipts, it sounded like there was [*sic*] other motivations that preceded it," Augustine responded, "There may very well have been. [¶] . . . [¶] . . . Just like the existence of Mojgan Larian's attempt to collect this judgment was known to me[,] [t]he existence of the other family law motivations, arguments, litigation, appeal, et cetera, that was known to me, as well."

### (c)   Abraham's Testimony

Abraham's testimony was received via declaration.[8]  He testified that it was his idea to create the Trust as a means to

---

[8] Though the parties had stipulated to permit testimony via videoconference, nothing in the record indicates the court ever agreed to receive testimony in that manner. At trial, Abraham's attorney acknowledged that the court had entered an order in September 2021 "saying live testimony or by declaration." The court agreed, and added that at the trial setting conference, "[i]t

*(Fn. is continued on the next page.)*

15

settle the ongoing litigation, that he "wanted to ensure that the Trust could not be used as a vehicle for Mojgan to use Trust assets to pay for her own lavish lifestyle, rather than the essential living needs of the Children," and that it was very important to him that the Trustee "be required to account to [Abraham] and Isaac Larian to ensure that the assets of the Trust were properly used." He further proclaimed that there was "one and only one reason I ceased making $5,000 monthly payments to the Trust": because, after reviewing some of the receipts provided by the trustee, it was "clear the funds were not being used on 'Essential Living Expenses' of the Children, but were in fact again being used by Mojgan for her own personal expenses." He reiterated that "the only reason [he] stopped making monthly payments to the Trust [was] because Mojgan failed and refused to account to the Trustee, and the Trustee failed and refused to account to [him] as required by the Settlement Agreement and Trust that [he] signed."

### 3. Ruling

In August 2022, the court granted the petition. In its ruling, it noted that "[a]t trial[,] Trustee Augustine testified that the reason given for the halt in monthly payments was pretextual and was more than likely an effort to retaliate for the actions taken in court in seeking restraining orders and the court imposing limitations on Albert's visitation with the children. Regardless of the motive, the argument that Mojgan was violating the express purpose of the trust (in her spending habits) has little or no merit in light of the language of the Trust

---

was restated that [testimony would be permitted only] in-person or by way of signed declaration."

16

instrument." The court proceeded to cite the language within Article 5.1.1 granting the Trustee sole discretion to pay for the essential living expenses of the children, and sole power to modify the proposed annual budget.

The court also held that "Article 8 of the Trust instrument [requiring the Trustee to account to Isaac and Abraham] does not empower the Grantors to dictate how the Trust is administered nor the right to suspend payments [*sic*]." The court found that "the right to compel a report or an accounting is simply that. There is no language in the Trust instrument authorizing the suspension of monthly payments. The plain language of the Trust is controlling and the court shall not expand, insert, imply or interpret anything to the contrary." The court therefore modified the Trust Agreement to "enable the Trustee to enforce the provisions of the global settlement agreement that pertain to the Trust and require monthly payments of $5,000 to the Trust from Abraham Talassazan" and held that the "Trustee is entitled to enforce the stipulated judgment against Abraham Talassazan and order that outstanding and future payments from Abraham be transferred to the Trust." The court then ordered that "Judgment is entered in the amount of $300,000 in favor of Michael R. Augustine, Trustee of the Talassazan Children's Trust as against Abraham Talassazan." Abraham timely appealed.

## DISCUSSION

### A. *Issue Preclusion is Inapplicable*

Issue preclusion "prevents relitigation of previously decided issues." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825.) "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in

17

the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Ibid.*) Abraham argues that issue preclusion from Mojgan's failed attempt to have the stipulated judgment entered barred the probate court's order. We disagree.

Setting aside whether a denial of a motion without prejudice can be considered a "final adjudication," issue preclusion requires an identical issue to be actually litigated and necessarily decided. However, the issue before the court deciding Mojgan's motion was whether, under the Settlement Agreement, Mojgan was entitled to have the Stipulated Judgment entered when she had not provided expense receipts. On the other hand, the issue before the probate court was whether Mojgan's and/or the Trustee's alleged failures to provide receipts and reports permitted Abraham to cease making monthly payments under the Trust Agreement. The superior court that denied Mojgan's motion did not consider this issue. As the probate court noted, the Settlement Agreement and the Trust Agreement are standalone documents, and Mojgan's failure to obtain the remedy provided for in the Settlement Agreement did not preclude the Trustee from seeking a remedy under the Trust Agreement.

For the same reason, we hold that the Trustee was not in privity with Mojgan on her motion to enforce the Settlement Agreement because they were attempting to enforce different legal rights. (See *Zaragosa v. Craven* (1949) 33 Cal.2d 315, 318 [" 'Who are privies requires careful examination into the circumstances of each case as it arises. In general, it may be said that such privity involves a person so identified in interest with

18

another that he represents the same legal right' "].)  Issue preclusion therefore does not apply.[9]

## B.  *The Court Was Not Barred from Entering Judgment*

Abraham contends the court was precluded from entering judgment against him because, pursuant to *Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, "a motion to enforce a settlement agreement may not be made in an action other than the action in which the settlement was made."  *Viejo Bancorp* is inapposite.  There, the appellate court considered "whether a motion to enforce a settlement agreement under Code of Civil Procedure section 664.6 may be considered in an action other than the action in which the settlement was made," and held that it could not.  (*Id.* at p. 203.)

But here, the Trustee made no motion under Code of Civil Procedure section 664.6.  Section 664.6 is not the exclusive means by which a settlement agreement may be enforced.  (See *MSY Trading Inc. v. Saleen Automotive, Inc.* (2020) 51 Cal.App.5th 395, 404–405, fn. omitted [court "retain[ing] jurisdiction over [a] settlement agreement pursuant to Code of Civil Procedure section 664.6 . . . only means the [court] *could* exercise jurisdiction without requiring a separate action on the settlement agreement.  It does not mean it is the *only* court with jurisdiction

---

[9] Abraham also argues that even if issue preclusion does not apply, the Trustee's petition amounted to an untimely motion for reconsideration.  The petition was not a motion for reconsideration because, as discussed at length above, the probate court was not being asked to consider the same issue as the superior court who had denied Mojgan's motion.

19

to adjudicate the settlement agreement"]; *Gauss v. GAF Corp.*
(2002) 103 Cal.App.4th 1110, 1122 [" '[t]he statutory procedure
for enforcing settlement agreements under section 664.6 is not
exclusive. It is merely an expeditious, valid alternative
statutorily created' "].) Therefore, *Viejo Bancorp* presents no bar
to the Trustee's petition.[10]

### C. *The Court Did Not Err in Finding That Abraham Lacked the Right to Suspend Payments*

Abraham argues that the court erred in finding he lacked
the right to suspend payments because Article 5.1.1 restricts all
payments from the Trust to the "essential living expenses of the
Children," and memorializes Mojgan's obligation to "retain" and
"provide to the Trustee upon request, any receipts associated
with" use of money that the Trustee distributed directly to
Mojgan for use for the children.

But nowhere in Article 5.1.1—or anywhere else in the
Trust Agreement—is there a provision stating that if the Trustee
does not restrict payments to the essential living expenses of the
children, or Mojgan does not retain or provide the requisite
receipts, Abraham is then permitted to suspend the required
monthly payments. While Article 8 requires the Trustee to
"report to the Grantors when, how and as requested by the

---

[10] Moreover, nothing in the record indicates the court
entered the Stipulated Judgment in case number BC518866.
Instead, in case number 19STPB11199 (i.e., this case), the court
stated that "Judgment is entered in the amount of $300,000 in
favor of Michael R. Augustine, Trustee of the Talassazan
Children's Trust as against Abraham Talassazan."

20

Granters," the court found—and we agree—that "the right to compel a report or an accounting is simply that. There is no language in the Trust instrument authorizing the suspension of monthly payments. The plain language of the Trust is controlling and the court shall not expand, insert, imply or interpret anything to the contrary." As the court stated repeatedly during the trial, "Whether or not there was a proper use of the funds, whether there was a breach of a fiduciary duty based upon what's written in [Article] 5.1.1, that's really not before me."[11]

### D. *Substantial Evidence Supports the Court's Finding That Abraham Breached the Trust Agreement*

Abraham contends the court's conclusion that he breached the Settlement Agreement was based on the Trustee's testimony that he halted payments for pretextual reasons. Abraham argues the court erred in this conclusion because the Trustee disavowed any expertise regarding Abraham's motivations. This argument is misguided.

First, while the court did not explicitly state that Abraham had breached either the Settlement Agreement or the Trust Agreement, the court's findings make clear that the court found Abraham breached the Trust Agreement, without opining on whether he also breached the Settlement Agreement. During trial, the court expressed its view that the two agreements were separate documents and stated that the superior court's denial of

---

[11] We express no opinion on whether the Trustee's actions in making distributions or reporting to Abraham conformed with the Trust Agreement's requirements.

21

Mojgan's motion to enforce the Settlement Agreement did not preclude the Trustee from seeking to enforce the Trust Agreement. In the court's order, the court analyzed provisions of the Trust Agreement, not the Settlement Agreement, and found that "Article 8 of the Trust instrument does not empower the Grantors to dictate how the Trust is administered nor the right to suspend payments [*sic*]."

Even had the court incorrectly found that Abraham's stated reason was pretextual, it would be irrelevant. As discussed above, the court expressly found that "[t]here is no language in the Trust instrument authorizing the suspension of monthly payments." Therefore, even if Abraham's sole reason for terminating payments was because he believed that both the Trustee and Mojgan were violating the terms of the Trust Agreement, there would still be no grounds permitting his cessation of payments.

## DISPOSITION

The court's order is affirmed. Respondent is awarded his costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.                    WEINGART, J.

22